Commonwealth *v.* Wiand et al., Appellant.

Argued October 26, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Robert Grey Bushong,* with him *William S. Acuff,* for appellants.

*David Sharman, Jr.,* Assistant District Attorney, with him *James F. Marx,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., February 26, 1943:

Appellants, father and son, stand convicted, with Wiand, of stealing chickens on a rather extensive scale. Wiand was arrested November 24, 1941, and taken to the State Police barracks at West Reading where, in the afternoon, he made a confession in which he also implicated appellants. Appellants were arrested late that evening. All three were held in custody overnight and until the afternoon of the next day, November 25th, when they were taken to the district attorney's office in the court house where, in the presence and hearing of appellants, Wiand acknowledged the previous confession and gave additional details likewise implicating appellants. In addition to appellants and Wiand there were present at the meeting in the district attorney's office an assistant district attorney who did the questioning, a stenographer, a county detective and two officers of the state police. The assistant district attorney testified: "After I had finished questioning Wiand I turned to Harry Reaver, Sr.,—of course I addressed the question to both of them, they were sitting there together, Reaver, Sr. and Jr.—I asked them whether they had anything they wished to say, and Harry Reaver, Sr., answered, he said, 'I haven't anything to say. He said everything.' That is all he said at that time."

At the trial Wiand repudiated both confessions.

The second confession was admitted in evidence and the jury were permitted to infer the guilt of Reaver, Sr., from the statement he made in response to the assistant district attorney's question and the guilt of Reaver, 3rd, from his silence.

We are all of opinion the appeals of Reaver, Sr. are without merit and his sentences should be affirmed. It is not contended the admission in evidence of Wiand's

confession was, as to this appellant, inadmissible. In appellants' brief it is said: "It must be conceded that the jury would have had the right to determine whether Reaver, Sr. ...... intended to admit his guilt ......" In our opinion his statement that "I haven't anything to say. He [Wiand] said everything" virtually amounted to a voluntary confession. The basis of the complaint is the statement by the court to the jury that they might infer his guilt from his *failure to deny* the accusations. To a metaphysician, there may be a recognizable distinction between telling the jury they might infer that Reaver, Sr., *by his statement,* intended to admit his guilt and telling them they might infer his guilt from *his failure to deny* Wiand's statement. In our opinion the distinction, if any, is without material significance. And the references in the charge to this appellant's failure to deny accusations made the next day when a police officer took him and Wiand to the homes of several of the owners of the stolen chickens were, in view of his confession, harmless. See *Com. v. Sydlosky,* 305 Pa. 406, 158 A. 154.

But in the opinion of a majority of this court, the appeals of Reaver, 3rd, must be sustained. The rule is: "Ordinarily silence when one is charged with a crime should not be received as evidence of guilt and is not admissible for any purpose unless there is other evidence in the case from which guilt may be inferred." *Com. v. Karmendi,* 328 Pa. 321, 335, 195 A. 62.

Much that we said in *Com. v. Vallone,* 151 Pa. Superior Ct. 431, pp. 434, 435, is applicable here. We there pointed out what we consider to be some of the dangers of oversimplification of the rule of assenting silence; that to dispose of cases of this kind by a formula would be unnecessary abandonment of the discriminations within our power. The meeting in the district attorney's office conducted by an assistant partook, even to a greater extent than in the Vallone case, of an official hearing or investigation. And, although the

assistant thought he gave this appellant, as well as his father, an adequate opportunity to speak, it is by no means entirely clear that his question was assumed by the son to have been also addressed to him. Of the two it seems quite likely the father was the dominant personality. This appellant was, at the time of his arrest, a nineteen-year-old boy of slight build; his father was forty-eight and weighed about two hundred pounds. He may very well have assumed the question was addressed to the father only, and when his father had spoken he may have been reluctant to speak. See *Com. v. Vallone,* supra, at pp. 438, 439. He was in custody, he was charged, although not yet formally, with implication in a crime, and in this quasi-official hearing he had a perfect right to remain silent. And where the silence of one accused of crime may be equally attributable to explanation other than a repression due to his guilt the evidence should not be admitted. Convictions based upon it would as likely be unjust as just.

Moreover, there was no "other evidence in the case from which guilt may be inferred." The trial judge charged the jury "that (Wiand's confession) is the only item of evidence which impresses the Court as a matter of law sufficient to submit to you the question of the guilty participation of Reaver, 3rd, in this case." In his opinion he expressed the different view, that proof that appellant had known Wiand for some time, had visited his house in Berks County and had previously sold chickens to the firm to which the stolen chickens were sold was sufficient. In our opinion it was not and the statement in the charge was correct. This was not evidence "from which guilt may be inferred." We think the Supreme Court meant that evidence of silence is never sufficient to *support* a conviction but, to be admissible at all, it must be merely *corroboration.*

There was no objection to the admissibility of the confessions and only a general exception was taken to the charge. But we consider the error in permitting the

jury to infer the guilt of Reaver, 3rd, from his silence at the meeting in the district attorney's office was fundamental. "A man is not to be deprived of his liberty and reputation because of the inadvertence of a trial judge or the carelessness of his counsel in failing to call the attention of the trial court to palpable error which offends against the fundamentals of a fair and impartial trial." *Com. v. O'Brien,* 312 Pa. 543, 546, 168 A. 244.

Since, in our view, there is no evidence to sustain the conviction of Reaver, 3rd, his point for binding instructions should have been affirmed.

The appeals in Nos. 293, 294, 295 and 296 October Term, 1942, are dismissed and the judgments and sentences involved therein are affirmed. The appeals in Nos. 291 and 292 October Term, 1942, are sustained, the judgments and sentences involved therein are set aside and appellant discharged.

RHODES, J., concurs in the result as to Reaver, Sr. and dissents as to Reaver, 3rd.

DISSENTING OPINION BY RHODES, J.:

I would concur in the judgment of the court as to Reaver 3d if I understood that it was a necessary result of the conclusion or of the formula applied in *Com. v. Vallone,* 151 Pa. Superior Ct. 431, from which I dissented, but by which I would be bound as the decision of this court. But in referring to that case the majority opinion now says: "We there pointed out what we consider to be some of the dangers of oversimplification of the rule of assenting silence; that to dispose of cases of this kind by a formula would be unnecessary abandonment of the discriminations within our power." Consequently, in following my own judgment, as well as what I believe to be the law, I would sustain the conviction. In his appeals there were two assignments of error: (1) that the court below erred in entering final judgment and imposing sentence, and (2) that

the court erred in overruling defendant's demurrer to the evidence against him.

A review of the essential facts as to this defendant applies to Reaver Sr. as well.

Defendants, Harry Reaver Sr. and his son Harry Reaver 3d, together with William C. Wiand, were indicted, tried and convicted of burglary, larceny, and receiving stolen goods committed in stealing chickens belonging to Nicholas Hasselhan and Samuel Shade. On similar charges Wiand and Reaver Sr. were convicted of the same offenses with reference to chickens owned by Irvin Miller and Lester Everhart.

On the day following his arrest, Wiand made a statement which was in the form of answers to questions propounded by the assistant district attorney. The questions and answers were taken stenographically in the presence and hearing of Reaver 3d. His father, Reaver Sr., the county detective of Berks County, and an officer of the Pennsylvania Motor Police were also present. In his statement, offered in evidence by the Commonwealth, received without objection, and read to the jury,[1] Wiand said that Reaver Sr. broke the locks on Miller's chicken houses with a steel bar, and assisted him in removing five or six bags of chickens; that at Hasselhan's place the two Reavers went into the chicken houses and removed the chickens while Wiand remained in the truck; that at Shade's place the two Reavers again entered the chicken houses and took the chickens while Wiand remained on the truck; that at Everhart's place Reaver Sr. and Wiand entered four or five chicken houses, and Reaver 3d drove the car. Wiand further stated that it was their practice to take the chickens to his place where the Reavers assisted him in crating them, after which Wiand took the chickens to Philadelphia where he sold them to a

---

[1] See *Com. v. Ballon,* 229 Pa. 323, 327, 78 A. 831; *Com. v. Carelli,* 281 Pa. 602, 606, 127 A. 305.

dealer. Wiand received the money and met the Reavers at some place along Ridge Avenue in Philadelphia where the money was divided among the three of them.

Immediately after the stenographic notes of this statement had been transcribed they were shown to Wiand, who read and signed them in the presence of both Reavers. The assistant district attorney then asked the Reavers if they had anything to say; Reaver 3d remained silent. Reaver Sr. said: "There is nothing that I can say. He said it all"; or "I have nothing to say. He said it all"; or "I haven't anything to say. He said everything."

The rule as to the probative value of vicarious admissions has been stated recently by our Supreme Court in *Com. v. Turza*, 340 Pa. 128, at page 135, 16 A. 2d 401, at page 405, where it was said: "The natural reaction of one accused of crime being to deny the accusation if it is unjust or unfounded, it is well settled that the acquiescence of such a person to an incriminating statement made or read in his presence will be given the effect of an admission in a criminal prosecution against him, provided there was motive or opportunity to deny. *Com. v. Karmendi*, 328 Pa. 321, 335 [195 A. 62]; *Com. v. Carelli*, 281 Pa. 602, 606 [127 A. 305]; *Com. v. Mazarella*, 279 Pa. 465, 470 [124 A. 163]; *Com. v. Brown*, 264 Pa. 85, 92 [107 A. 676]; *Com. v. Ballon*, 229 Pa. 323, 327 [78 A. 831]; *Com. v. Johnson*, 213 Pa. 607, 608 [63 A. 134]; *Com. v. Zorambo*, 205 Pa. 109, 112 [54 A. 716]."

In the present case there is not the slightest evidence that either Reaver was denied an opportunity to refute the incriminating statements made by Wiand. On the contrary, the record shows that the assistant district attorney expressly invited them to speak. They must have known that they were suspected as participants in some crime, because they had been taken into custody and their activities were obviously under investigation

by the officers of the Pennsylvania Motor Police, the county detective, and the assistant district attorney. It can scarcely be said that these circumstances would not furnish sufficient motive for a denial on the part of both defendants if the accusatory statements of Wiand were untrue.

Reaver 3d argues that the general rule should not be applied in his case because he was entitled "to remain silent after he [had been] taken into custody and during an official examination of his case." It is apparent from many opinions of the appellate courts that the defendant was in custody and yet his silence or conduct, in the face of accusatory statements, was accorded the evidential value previously indicated: *Ettinger v. Commonwealth,* 98 Pa. 338; *Com. v. Ballon,* 229 Pa. 323, 78 A. 831; *Com. v. De Palma,* 268 Pa. 25, 110 A. 756; *Com. v. Lisowski,* 274 Pa. 222, 117 A. 794; *Com. v. Weigand,* 134 Pa. Superior Ct. 603, 5 A. 2d 385.

I recognize, as said in *Com. v. Zorambo,* 205 Pa. 109, at page 112, 54 A. 716, at page 717, that "an accused at a *judicial* inquiry into his guilt may hold his peace in the face of any accusation against him, and his silence cannot be regarded as any, not even the slightest, evidence of his guilt." [Italics supplied.] But the facts in the present case do not bring it within that exception. Here the proceeding in progress at the time of the tacit admissions was merely an investigation by law enforcement officers; it was not a *judicial* inquiry by or before a tribunal empowered to determine the guilt or innocence of an accused.

Prior to the offer in evidence of Wiand's statement and the presentation of the testimony as to defendants' silence or conduct in the face of it, the corpus delicti had been adequately proved. The evidence left no doubt that the crimes had been committed by someone, and proof of the identity of the wrongdoers was not a prerequisite to the reception of the admissions in evidence. *Com. v. Turza,* supra, p. 134; *Com. v. Eng*

*Chuing,* 150 Pa. Superior Ct. 445, 28 A. 2d 710. The accused's identity may be established by his confession or admission. See *Com. v. Amato,* 148 Pa. Superior Ct. 151, 154, 24 A. (2d) 681. And when the Commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury, it is competent to show a confession or admission made by the defendant connecting him with the crime. Under such circumstances the jury should first pass on the sufficiency of the evidence of the corpus delicti. If it satisfies them beyond a reasonable doubt that the crime has been committed, then they are at liberty to give the confession or admission such weight as it is entitled to, taking into view the circumstances surrounding it, and the extent to which it has been corroborated. See *Gray v. Com.,* 101 Pa. 380, 386.

I think the silence of Reaver 3d, and the statement of Reaver Sr., under the circumstances, were tacit admissions of guilt, that they were competent and substantive evidence for the jury's consideration. The corpus delicti having been sufficiently established these admissions were for the jury. See *Com. v. Bishop,* 285 Pa. 49, 57, 131 A. 657. There was relevant testimony that the same dealer who bought the stolen chickens from Wiand handled poultry from both Reavers; that Reaver Sr. called Wiand on the telephone at the place of business of this dealer; that Wiand knew the Reavers; that Wiand travelled around with Reaver 3d; that Wiand passed money to the Reavers in a diner in Philadelphia; that Reavers had a black Packard Sedan (which Wiand in his accusatory statement said was used to transport the stolen chickens); that it was in Berks County on two occasions when Wiand was in it.

Wiand as a witness for the defense also testified that at the hearing before the alderman he had testified that he and the Reavers stole the chickens, but that this testimony was not true.

These circumstances need not be of themselves suffi-

cient proof of guilt; but together with defendants' tacit admissions they warranted the jury in finding both of them guilty beyond a reasonable doubt.

Reaver 3d testified in his own behalf, and denied his guilt, but his credibility was badly shaken by his own testimony.

His conviction should be sustained.

I concur in the affirmance of the judgment of conviction as to Reaver Sr., who did not testify, on grounds which I have previously stated herein, but not for the reasons given in the opinion of the court. The majority opinion has oversimplified the reasons for affirming his conviction.

Reaver Sr. made no voluntary confession, and I fail to see how his words can be so construed from what occurred at the time and prior thereto.

His reply when invited by the assistant district attorney to speak "I have nothing to say. He said it all," is not a confession as I view it, but an evasive or equivocal response tantamount to absolute silence under the circumstances. *Com. v. Turza,* supra, p. 136.