Commonwealth *v.* Manuszak et al., Appellants.

Argued April 24, 1944. Before KELLER, P. J., BALD-

RIGE, HIRT, KENWORTHEY and RENO, JJ. (RHODES and JAMES, JJ., absent).

*B. D. Oliensis,* with him *H. Lester Haws,* for appellants.

*Thomas E. Waters,* Assistant District Attorney, with him *Frederick B. Smillie,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., July 15, 1944:

These four appellants, together with Seiders who pleaded guilty and became a commonwealth witness, were indicted in a bill containing five counts charging them with setting up and maintaining a gambling place and enticing persons to gamble. Sections 605 and 606 of the Penal Code of June 24, 1939, P. L. 872, 18 PS 4605, 4606. Additional bills also charged that appellants "did unlawfully engage in gambling for a livelihood." Section 603, 18 PS 4603. They were found guilty of all charges. The appeals bring up for consideration the sufficiency of the evidence to sustain the convictions.

In the early morning of March 8, 1943, the police raided a large dice game being conducted in a room on the third floor of the Melrose Country Club in Cheltenham Township, Montgomery County. Appellants, with about forty others, were in the room. The game was

being conducted on a table especially constructed for the purpose on the top of which there were bills totalling in excess of $1,000 which were confiscated.

The commonwealth sought to sustain the charge that appellants were engaged in gambling for a livelihood by showing that they were frequently seen—perhaps three or four times a week—over a period of years hanging around a poolroom at all hours of the day and night, that several Philadelphia police officers had known appellants for a number of years and that throughout the period they had not known any of them to have a regular occupation. And it was shown that each, on a number of occasions, had, within recent years, been seen engaged in gambling, maintaining a gambling establishment, conducting a lottery or conducting a horse race pool. They had all been arrested several times and although they had not always been tried and convicted, an acquittal in a case like this merely goes to the credibility of the witness who testifies that on a particular occasion they had been seen to engage in the commission of the offense. I Wharton's Criminal Evidence (11th ed.) Section 363. And where the criminal offense charged is one of a habitual nature or involves doing repeated acts this kind of evidence is always admissible: 38 C. J. S. 180; *Mitchell v. State,* 9 Okl. Cr. 172, 130 Pac. 1175; *Com. v. Smith,* 89 Pa. Superior Ct. 190; I Wigmore, Evidence (3rd ed.) Section 203.

The contention that the evidence was insufficient to support convictions of Ostrowski, Gabrick and Perri of maintaining a gambling place is equally without merit.

There was direct evidence by the police officers who conducted the raid that Ostrowski was at the time acting as the lookout or door man of the establishment. This assistance and participation in the enterprise was sufficient to make him a principal: *Com. v. Ciccone,* 85 Pa. Superior Ct. 316.

The commonwealth showed that Gabrick rented the room at the Club from Seiders, the manager; that when Seiders discovered that a portable, professional dice table had been set up he complained to Gabrick who promised him that "This is the last night" that the dice game would be run; that when the police entered the room Gabrick was standing at or near the cut-out at the middle of the table, the usual place for the operators to stand; and that Gabrick attempted to take the "rap" for all four appellants by insisting to the police that he was the sole proprietor of the establishment. The failure of the trial judge to describe Seiders as an accomplice and to warn the jury of the weight to be given his testimony would have been error even in the absence of a specific request for such instruction, if there had been no corroboration. See *Com. v. Beck*, 137 Pa. Superior Ct. 410, 9 A. (2d) 175. But we have held that a specific request is necessary—and there was none here—in the presence of corroboration: *Com. v. Boyle*, 108 Pa. Superior Ct. 598, 165 A. 521.

After the arrest Gabrick, in the presence of one of the police officers, turned to Manuszak and Perri and said, "What do you say we flip a coin to see who will take the rap?" This was the clearest sort of accusation by Gabrick that his companions and friends were also guilty; it was as if he had said to them, "We are all guilty so let's flip a coin to see who will take the rap." When the police officer rejoined these appellants, Gabrick said, "I own the game, *I will take the rap*, it was my game," (emphasis added) and made the statement that he had paid $75 for the table. Neither Manuszak nor Perri denied his guilt although when the suggestion that they flip a coin was first made they apparently said they "were not going to do it." But whether this response to the accusation so clearly implied in Gabrick's statement that he was going to take the "rap" amounted to a denial of guilt was for the

jury: *Com. v. Vallone,* 347 Pa. 419, 32 A. (2d) 889. A police officer testified that he remarked to Perri in the presence of Manuszak, "It is a shame to ruin this table," to which Perri replied, "Yes, it cost us $75.00 and you only let us play three times. Why didn't you leave us play more to let us get our money out of it?", and that while talking to Perri alone, Perri said, "Why are you holding us, one of us is going to take the blame, you don't want to pinch all four?" In addition, the money bag which one of the police officers testified was part of the regular equipment of a game of this sort was found in Perri's possession.

We think the case against Manuszak on the charge of maintaining a gambling place is considerably weaker than the case against the other appellants. Except for the possible inference which might be drawn from his assenting silence in the face of Gabrick's implied accusation we are unable to find anything which points to his guilt. And the Supreme Court has held that such evidence, even when admissible, is corroborative only and must be accompanied by other evidence of guilt; it will not, standing alone, support a verdict: *Com. v. Karmendi,* 328 Pa. 321, 335, 195 A. 62. His presence in the room at the time of the raid might support an inference that he was engaged in the dice game but gambling is not an indictable offense in this state. See *Com. v. Zotter,* 131 Pa. Superior Ct. 296, 200 A. 264. The commonwealth suggests that a card and $426.28 taken from his possession were incriminating circumstances. Although the card and money might indicate he had been gambling it would indicate nothing more.

The judgment in No. 73, February Session, 1943, is reversed as to Manuszak. All the other judgments are severally affirmed, and it is ordered that appellants appear in the court below at such time as they may be there called and that they be by that court committed

until they have complied with their sentences or any part of them that had not been performed at the time the appeals were made a supersedeas.