Commonwealth *v*. Jefferson, Appellant.

Argued April 17, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William E. McDaniels,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Welsh S. White,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 1, 1968:

Leonard Jefferson was indicted in October, 1957, on two separate charges of aggravated robbery. He stood trial on October 29, 1958 on one of the charges* and the court, sitting without a jury, found him guilty. After a denial on February 26, 1959 of his motions for new trial and in arrest of judgment he was sentenced

---

\* He had pleaded guilty on the other charge of aggravated robbery and sentence thereon was suspended.

to 10 to 20 years imprisonment. No appeal from the refusal of his motions was taken.

On March 6, 1967, he filed a Post Conviction Hearing Act petition, contending that he had not knowingly and intelligently waived his right to appeal. After a hearing on that petition he was granted the right to appeal nunc pro tunc to the Superior Court. The appeal was taken and the Superior Court, with two dissents, affirmed the conviction: 211 Pa. Superior Ct. 439. We granted an allocatur.

The main issue before us is whether or not Jefferson is entitled to claim a violation of his constitutional rights because of the admission into evidence at his trial of the reply he gave the police upon their reading to him the confession of one John Hughes, which confession implicated Jefferson in the robbery. The police officer testified that after hearing Hughes's statement implicating Jefferson, Jefferson "stated that he was glad it was all over; he was glad that he was apprehended. He said he was tired of running—he was afraid every minute."

The court below considered this statement as an admission which corroborated and adopted Hughes' statement as it was read to him by the police. Jefferson contends that his reply was an equivocal one and therefore at most could only be regarded as a tacit admission quoting from 112 U. of Pa. Law Review 226: ". . . the tacit admission rule may also be invoked if the accused responds not with silence but with words somewhere between a denial and an express acquiescence.", and adding that such a tacit admission was proscribed by the decision of the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436. In making this argument, Jefferson relies on *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, where this Court held that an accused's failure to deny, or his silence in the face of accusatory statements made

in his presence, could not, under the *Miranda* decision any longer be used against him, "previous decisions of this Court to the contrary notwithstanding."

However, this Court also stated in that case that the proscription against the use of tacit admissions as evidence was not to be applied retroactively. To this Jefferson answers that the proscription, if applied in his case would not amount to a retroactive application because the judgment in his case was not finalized as of the date of the *Miranda* decision—June 13, 1966— because he still had the right to appeal since he had been unlawfully deprived of that right, as found by the lower court which had allowed him to appeal nunc pro tunc. In support of this argument, Jefferson cites *Commonwealth ex rel. Staino v. Cavell*, 425 Pa. 365, where this Court stated: "Hence it logically follows from Tehan that the ruling banning the evidentiary use of 'tacit admissions,' first explicated in Miranda, need only be applied to those cases wherein the judgment was not finalized as of the date Miranda was announced."

The United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, defined finalization of judgment: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed."

Jefferson's right to appeal depended on a nunc pro tunc deliberation. "Nunc pro tunc" is defined by Black's Law Dictionary as "Now for then . . . A phrase applied to acts allowed to be done after the time they should be done . . . with the same effect *as if it were done when it should have been done.*" Thus, whatever Jefferson is entitled to on appeal is what he was entitled to, had the appeal been taken at its proper time. The delay in the taking of his appeal, even though not the result of his own fault, however, cannot enlarge

those rights so as to permit him to obtain an advantage which would not have been his to attain, had the appeal been taken at its proper time. Jefferson's rights must be determined by the law that existed when appeal was open to him. This ruling cannot be regarded as a penalty because if his appeal had been properly taken in 1959 he could not have obtained the relief he now requests in 1968.

. . In *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, supra, the defendant was convicted on May 19, 1960 and sentenced to life imprisonment. His motions for new trial were withdrawn and no direct appeal taken. In 1965 he filed a petition for habeas corpus which the lower court dismissed. On appeal, this Court remanded the record "for a hearing solely to determine if the appellant effectively waived his right to the assistance of counsel in the prosecution of the new trial motion and appeal from the judgment," stating (p. 88) : "Therefore, after consideration of the purpose of the rule announced in Miranda, supra, concerning evidence of 'tacit admissions,' the reliance placed upon this Court's rulings in regard thereto for nearly a century and the obvious effect of its retroactive application on the administration of justice, we rule that it need not and will not be applied retroactively in Pennsylvania." It was thus clearly indicated that even if the lower court had determined Shadd had the right to appeal, the appeal could not be governed by the *Miranda* decision.

Jefferson argues also that, taking his reply as a tacit admission, it is to be equated with a coerced or involuntary confession, subject to collateral attack at any time, and, therefore, capable of vitiating the conviction against him, regardless as to whether there exists other evidence to sustain it. In this connection he cites *Commonwealth v. Dravecz,* 424 Pa. 588. However, the term "tacit admission" in that case was limit-

ed to an admission implied from silence in the face of an accusatory statement; the entire reasoning of the opinion demonstrates that it was based on the injustice of having a man's silence create evidence against him. At that time this Court was not faced with the definition of "tacit admission" as including an equivocal reply. Thus, the defendant cannot ask us here to expand that meaning to include an equivocal reply and then also ask us to apply a decision, the reasoning of which was clearly based on a meaning not so enlarged.

An equivocal reply cannot be equated with a forced confession by reason of silence. In the latter case, the accused's silence should not be permitted as evidence of a confession because by his silence he clearly does not intend a confession. However, when an accused makes an equivocal reply which is a voluntary act on his part, the reasoning is bound to be different.

As to the contention that there should have been a preliminary hearing as to voluntariness of Jefferson's reply when Hughes's statement was read to him, what was said in *Commonwealth ex rel. Shadd v. Myers,* supra, is pertinent here: "It is noted, that the record discloses that the trial court did not conduct a preliminary hearing in the absence of the jury to determine the admissibility of the testimony of the 'tacit admission' as may be required by Jackson v. Denno, 378 U.S. 368 (1964). Since no objection to the introduction of the testimony on the ground of voluntariness was suggested or interposed at trial, the issue may not be raised at this late date. See, Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A. 2d 810 (1965). We need not reach the question of whether or not evidence of 'tacit admissions' comes within the purview of Jackson, supra."

The judgment of sentence of the Court of Oyer & Terminer of the County of Philadelphia imposed on Bill No. 866, April Sessions, 1957, is affirmed.

Mr. Justice JONES and Mr. Justice EAGEN concur in the result.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Whether Jefferson's admission be termed tacit or equivocal is completely irrelevant.[1] The essence of the "tacit" admission rule was that an individual accused of crime will naturally *deny* the accusation and that a *failure* to deny this accusation would permit an inference of guilt. Any action short of a denial made the accusation admissible. *Commonwealth v. Vallone,* 347 Pa. 419, 421, 32 A. 2d 889, 890 (1943) leaves no doubt that this failure to deny was the basis for evidentiary use of a confederate's inculpatory statement: "The rule of evidence is well established that, when a statement made in the presence and hearing of a person is incriminating in character and naturally calls for a *denial* but is not challenged or contradicted by the accused although he has opportunity and liberty to speak, the statement and the fact of his *failure to deny* it are admissible in evidence as an implied admission of the truth of the charges thus made. The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt." (Emphasis supplied.) See Developments in the Law—Confessions, 79 Harv. L. Rev. 935, 1036-44 (1966); Note, Tacit Criminal Admissions, 112 U. Pa. L. Rev. 210 (1963). That Jefferson said something short of admitting the truth of his alleged conspirator's declarations rather than nothing is immaterial for, so long as he did not deny the accusations, the tacit admission rule applied. What Mr. Justice

---

[1] It seems clear that Jefferson's reply cannot be classified as an adoptive admission such as the one found in *Commonwealth v. Cheeks,* 429 Pa. 89, 239 A. 2d 793 (1968).

MUSMANNO has said is that Jefferson would have been better off had he remained silent. Why this should be true when the basis for admitting Hughes' statement was Jefferson's failure to deny it, not his failure to remain silent, is nowhere explained. I conclude that Jefferson's admission is as tacit as that found in any of our other tacit admission cases.

Mr. Justice MUSMANNO next distorts the views expressed by a majority of this Court in *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967). Mr. Justice EAGEN's concurring opinion, in which Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice O'BRIEN joined, states that a reversal is required in all cases employing a tacit admission "wherein the judgment was not finalized as of the date *Miranda* was announced." Id. at 595, 227 A. 2d at 911. I am at a loss to determine how *this* judgment of conviction can be deemed final as of the date of *Miranda*. This appeal is a direct appeal *not* a collateral attack. The very heart of the grant of relief under *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963) is a determination that the state by reason of the accused's indigency has denied him the right to appeal.[2] When this right is restored, the appellate court examines all alleged errors in a posture identical to that employed for any other direct appeal. For example, claims such as the sufficiency of the evidence are cognizable.

Even the most cursory reading of *Dravecz* indicates that this Court chose to adopt the *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731 (1965) rule to restrict the retroactivity of its decision. As articulated by the Supreme Court, the concept of finality employed in *Linkletter* and adopted by *Dravecz* compels the conclusion that Jefferson's conviction is not final: "By final we

---

[2] The Commonwealth does not challenge the propriety of the determination below that Jefferson was denied his *Douglas* rights.

mean where the judgment of conviction was rendered, the *availability* of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." 381 U.S. at 622 n.5, 85 S. Ct. at 1734 n.5. (Emphasis supplied.) That the availability of appeal for Jefferson has not been exhausted is amply demonstrated by the fact that the present proceeding is a direct appeal. If the Supreme Court (and this Court, by adopting the Supreme Court's test) intended to exclude *Douglas* claims (*Douglas*, decided in 1963, was well prior to *Linkletter*) it could have insisted that the relevant inquiry was whether the *time* for appeal not its availability had expired.[3]

Yet Mr. Justice MUSMANNO concludes that this appeal is final for purposes of *Dravecz* because it is a nunc pro tunc appeal. What he fails to appreciate is that the availability of various constitutional challenges turns not on the nature of the appeal but rather the operative event which determines the prospectivity of the right asserted. *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731 (1965) teaches us that the protections afforded by *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961) are applicable to all defendants whose convictions were not finalized at the time *Mapp* was decided; *Johnson v. New Jersey*, 384 U.S. 719, 86 S. Ct. 1772 (1966) that individuals whose trials commenced after the dates of decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) and *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964) may avail themselves of these new principles; and *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967) that all line-

---

[3] Although nowhere suggested in his opinion, it is possible that Mr. Justice MUSMANNO is sub silentio attempting to overrule *Dravecz*. If such is the case, I would still be compelled to dissent on the basis of the views I expressed in my opinion in *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 91-93, 223 A. 2d 296, 301-02 (1966) (dissenting opinion).

ups conducted after the decision in *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967) not in conformity with the *Wade* rules are invalid. Simply, the Supreme Court of the United States has used at least three distinct events to anchor the prospectivity of its decisions: (1) whether the litigation is final (*Linkletter*); (2) the date of the commencement of trial (*Johnson*); and (3) the date upon which the alleged constitutional violation occurred (*Stovall*). At least two of these three alternatives were available to this Court when *Dravecz* was decided.[4] Had we chosen the *Johnson* rule, Jefferson would not be able to assert the rights established in *Dravecz* for his trial commenced well before *Miranda*.[5] We did not. Instead, this Court employed the *Linkletter* finality concept and, under *Linkletter*, this judgment is not final.

Assuming arguendo that Jefferson cannot find shelter under *Dravecz*, Mr. Justice MUSMANNO ignores two cases recently decided by this Court giving limited retroactivity to the proscription against use of tacit admissions. In both *Commonwealth v. Stevens*, 429 Pa. 593, 240 A. 2d 536 (1968) and *Commonwealth ex rel. Berkery v. Myers*, 429 Pa. 378, 239 A. 2d 805 (1968) we held that where the use of a tacit admission results in a fundamentally unfair trial that use can be collaterally attacked, i.e., the conviction is retroactively invalid. Given the fact that the bartender allegedly robbed by Jefferson could not identify him at trial and that the Commonwealth's case rested almost complete-

---

[4] In a different context, the third alternative (the *Stovall* rule) was also suggested to this Court prior to *Dravecz*. See *Commonwealth v. Schmidt*, 423 Pa. 432, 442-445, 224 A. 2d 625, 630-32 (1966) (dissenting opinion).

[5] Since *Dravecz* was termed an outgrowth of *Miranda*, such a choice was available to this Court. Had we opted for the *Stovall* rule, Jefferson again would be unable to employ *Dravecz* for his tacit admission was made before *Miranda* was announced.

ly[6] upon Jefferson's tacit admission, I believe that use of this admission might well be characterized as fundamentally unfair.[7] However, in view of the fact that I am convinced that Mr. Justice MUSMANNO has misinterpreted *Dravecz,* I find it unnecessary to express my views as to the applicability of *Stevens* and *Berkery.*[8] Furthermore, despite the intimation contained in Mr. Justice MUSMANNO's opinion to the contrary, the withdrawal by Jefferson's trial counsel of his objection to evidentiary use of his client's tacit admission would not constitute a waiver of the contention presently made[9] for the simple reason that neither counsel nor client can be required to anticipate *Dravecz, Stevens* or *Berkery,* decisions rendered well after the date of Jefferson's trial. See *O'Connor v. Ohio,* 385 U.S. 92, 87 S. Ct. 252 (1966) ; *Commonwealth v. Stevens,* supra

---

[6] The only other evidence presented by the Commonwealth of any probative value was testimony by one police officer that the allegedly robbed bartender had identified Jefferson's picture. However, the bartender denied that he had done so.

[7] It is possible that the *Stevens-Berkery* rule was foreshadowed by a line of our cases stating that a tacit admission may not be employed unless there is other evidence of guilt. The import of these cases is that a tacit admission alone is insufficient to support a verdict. See *Commonwealth v. Karmendi,* 328 Pa. 321, 335-36, 195 Atl. 62, 68 (1937) ; *Commonwealth v. Manuszak,* 155 Pa. Superior Ct. 309, 313, 38 A. 2d 355, 357 (1944) ; *Commonwealth v. Wiand,* 151 Pa. Superior Ct. 444, 447, 30 A. 2d 635, 637 (1943) ; *Commonwealth v. Weigand,* 134 Pa. Superior Ct. 603, 606, 5 A. 2d 385, 386 (1939). Unless the testimony of the police officer that Jefferson was identified by photograph, see footnote 6, supra, is sufficient other evidence, then Jefferson's conviction may well be supported by insufficient evidence. He makes just such a contention and, of course, can succeed on this ground for we deal with a direct appeal.

[8] Since Mr. Justice MUSMANNO affirms this conviction, it would appear incumbent upon him to discuss why *Stevens* and *Berkery* do not apply.

[9] See *Commonwealth v. Snyder,* 427 Pa. 83, 233 A. 2d 530 (1967).

at 598-600, 240 A. 2d at 539-40; *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765 (1967).

I dissent.

Mr. Justice COHEN and Mr. Justice O'BRIEN join in this dissenting opinion.