Robert Lee CHOICE, Petitioner,

v.

PENNSYLVANIA BOARD OF
PAROLE, Respondent.

Civ. No. 76–779.

United States District Court,
M. D. Pennsylvania.

Aug. 22, 1977.

Robert Lee Choice, pro se.

Robert P. Kane, Atty. Gen., Harrisburg, Pa., for respondent.

## MEMORANDUM

NEALON, Chief Judge.

Petitioner, Robert Lee Choice, filed this habeas corpus action contending that respondent, the Pennsylvania Board of Parole, unlawfully extended his maximum sentence by revoking his parole and taking away his "street time." Respondent filed a motion to dismiss and a memorandum of law in support thereof. After having had his attention twice directed to Local Rule of Court 301.01, petitioner filed a "traverse" in opposition to the motion to dismiss. Both parties have filed briefs and supplemental briefs on the exhaustion of state remedies issue. Respondent has filed supplemental information concerning the revocation of petitioner's parole.

The first issue before the Court is whether petitioner exhausted state remedies, *see* 28 U.S.C. § 2254, or deliberately bypassed them. Petitioner filed a complaint in mandamus in the Supreme Court of Pennsylvania [1] in which he contended that the Board violated his rights under the fifth and fourteenth amendments when it extended his maximum sentence and that the Board had no jurisdiction over him after December 13, 1974. Because original jurisdiction of a mandamus action against the Commonwealth is with the Pennsylvania Commonwealth Court, *see* 17 P.S. § 211.401, the Pennsylvania Supreme Court transferred the action to the Commonwealth Court on November 24, 1975.[2] On May 11, 1976, the

1. No. 40, Miscellaneous Docket No. 21 (Pennsylvania Supreme Court, Eastern District, 1975).

2. No. 42, Transfer Docket (Pennsylvania Commonwealth Court, 1975). The action was transferred to the Commonwealth Court pursuant to 17 P.S. § 211.503(b).

Commonwealth Court dismissed the complaint. *Choice v. Pennsylvania Board of Probation and Parole*, 24 Pa.Cmwlth. 438, 357 A.2d 242 (1976). Although an appeal to the Pennsylvania Supreme Court was available,[3] Choice did not appeal from the Commonwealth Court's dismissal of his action.

Exhaustion of state remedies ordinarily requires the petitioner to have presented his claim to the highest state court. *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 892 (3d Cir. 1975); *United States ex el. Schultz v. Brierley*, 449 F.2d 1286 (3d Cir. 1971); *United States ex rel. Turner v. Rundle*, 438 F.2d 839 (3d Cir. 1971). In this case, petitioner has not presented his claim to the Pennsylvania Supreme Court. The thirty-day period within which petitioner had to appeal to the Supreme Court of Pennsylvania[4] expired prior to his filing of the instant action. Rule 105 of the Pennsylvania Rules of Appellate Procedure, 42 P.S., does not permit an enlargement of time within which to file an appeal. Although petitioner could theoretically file an appeal *nunc pro tunc, cf. Commonwealth v. Jefferson*, 430 Pa. 532, 243 A.2d 412 (1968); *Pinsky v. Master*, 343 Pa. 451, 23 A.2d 727 (1942); *Wheeling-Pittsburgh Steel Corporation v. Department of Environmental Resources*, 27 Pa.Cmwlth. 356, 366 A.2d 613 (1977), the "power to allow appeals *nunc pro tunc* is limited." *Wheeling-Pittsburgh Steel Corporation v. Department of Environmental Resources, supra*, 366 A.2d at 615. The exhaustion of state remedies in a federal habeas corpus proceeding is *not* jurisdictional; rather, it is a matter of federal-state comity. *Preiser v. Rodriguez*, 411 U.S. 475, 491, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Fay v. Noia*, 372 U.S. 391, 419–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The comity policy underlying the exhaustion doctrine is satisfied where no state remedies are then available

to a habeas corpus petitioner, *see, United States ex rel. Johnson v. Johnson*, 531 F.2d 169, 173 (3d Cir. 1976), or where circumstances render the available remedy ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b). Because of its limited and discretionary nature, an appeal *nunc pro tunc* does not appear to be an "available" or an "effective" remedy to protect petitioner's rights within the meaning of 28 U.S.C. § 2254(b). In these circumstances, the Court believes the exhaustion requirement has been satisfied and, therefore, will not require petitioner to appeal *nunc pro tunc* to the Pennsylvania Supreme Court.

Petitioner's failure to appeal from the Commonwealth Court to the Supreme Court raises the issue of whether he deliberately bypassed state remedies. A "federal habeas corpus judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts, on the ground that in so doing he has forfeited his state court remedies." *Humphrey v. Cady*, 405 U.S. 504, 517, 92 S.Ct. 1048, 1056, 31 L.Ed.2d 394 (1972); *Fay v. Noia, supra*, 372 U.S. at 438, 83 S.Ct. 822. However, not every state procedural default bars federal habeas corpus relief. *Humphrey v. Cady, supra*, 405 U.S. at 516, 92 S.Ct. 1048. In order to constitute a forfeiture of state court remedies, the procedural default "must be the product of an understanding and knowing decision by the petitioner himself . . ." *Humphrey v. Cady, supra* at 517, 92 S.Ct. at 1056; *Fay v. Noia, supra*, 372 U.S. at 439, 83 S.Ct. 822, *citing* waiver standard enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Here, petitioner contends that because he was *pro se* and because he initially and mistakenly filed his mandamus action in the Pennsylvania Supreme Court, he was unaware that he could appeal the decision of the Commonwealth Court. *See* Reply Brief on Exhaustion, Exhibit "I–A." In view of the absence of counsel and the initial misfiling of the ac-

---

**3.** *See* Pennsylvania Appellate Court Jurisdiction Act of 1970, 17 P.S. §§ 211.203 and 211.-204.

**4.** *See* Rule 903 and Rule 1113 of the Pennsylvania Rules of Appellate Procedure, 42 P.S.

tion, respondent concedes[5] that petitioner's failure to appeal was not a knowing and intelligent waiver of his claim. Applying the forfeiture standard set forth in *Humphrey* and *Fay*, the Court finds that petitioner did not deliberately bypass his state remedies.

Because petitioner does not have any state remedies currently available and because he did not deliberately bypass state remedies, the Court will address petitioner's claims on the merits. Because the material facts concerning the revocation of petitioner's parole are undisputed, the petition presents issues of law only. Therefore, an evidentiary hearing is not necessary. 28 U.S.C. § 2243; *deVyver v. Warden, U. S. Penitentiary*, 388 F.Supp. 1213, 1215–16 (M.D.Pa.1974).

The record indicates that on August 18, 1969, petitioner was sentenced in Philadelphia County, Pennsylvania, to a one to five year term for the offenses of burglary, larceny and receiving stolen goods. Phila.C.P. No. 41, July 1968. The effective date of his sentence was August 18, 1969, with a minimum of August 18, 1970, and a maximum of August 18, 1974. Petitioner was released on parole on October 10, 1970, shortly after the expiration of his minimum sentence. On August 15, 1974, Parole Case Specialist Largent recommended to the respondent that petitioner be declared delinquent on parole, effective April 30, 1974, the date on which he was fired from his approved job for absenteeism. *See* Supplemental Information (Document 22). Petitioner's maxi-

mum sentence expired on August 18, 1974. Two days later, on August 20, 1974, respondent declared petitioner delinquent, effective April 30, 1974.[6] On August 25, 1974, petitioner was arrested in Monroe County, Pennsylvania, on charges of armed robbery, theft and receiving stolen goods. The robbery for which petitioner was charged took place on August 25, 1974.

On August 27, 1974, a parole violator's warrant was issued charging petitioner with technical violations of his parole. Petitioner was given a preliminary hearing on the technical violations on October 8, 1974, and a revocation hearing on October 30, 1974. On November 15, 1974, the Board recommitted petitioner as a technical parole violator pending disposition of his new criminal charges. Pursuant to 61 P.S. § 331.21a(b), petitioner was recommitted for the remainder of his term, which at that point was three months and 18 days. Accordingly, the expiration date of petitioner's maximum sentence was extended to December 13, 1974.

On December 13, 1974, petitioner's maximum sentence expired, and the Board withdrew its commit and retain warrant. On January 9, 1975, petitioner was convicted in Monroe County of the robbery for which he had been arrested on August 25, 1974. On January 21, 1975, the Board relodged its commit and retain warrant. Petitioner was given a revocation hearing on February 27, 1975. On March 11, 1975, the Board recommitted petitioner as a convicted parole violator. Under 61 P.S. § 331.21a(a),[7] petition-

---

**5.** *See* Respondent's Supplemental Brief on Exhaustion (Document 17) at 3.

**6.** In declaring petitioner delinquent, respondent implicitly rejected Largent's additional recommendation that "in the event client's [i. e., petitioner's] whereabouts remain unknown until the maximum expiration date [8/18/74], that our interest then be closed."

**7.** 61 P.S. § 331.21a(a) reads, in part:
"(a) Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment,

for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole. The board may, in its discretion, reparole whenever, in its opinion, the best interests of the prisoner justify or require his release on parole and its does not appear that the interests of the Commonwealth will be injured thereby.  . . . ."

er was given no credit for the time at liberty while on parole. Consequently, the expiration date of his maximum sentence was extended for three years, seven months and 8 days, until March 19, 1979. On August 18, 1976, petitioner was reparoled from his original sentence to serve the new sentence imposed in Monroe County.

Petitioner contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. Section 331.21a(a) of Title 61 of Purdon's Statutes Annotated, directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts. Section 331.21a(a) has been held not to violate the due process and equal protection guarantees of the federal constitution,[8] and not to violate the constitutional prohibitions against double jeopardy,[9] bills of attainder,[10] cruel and unusual punishment[11] or *ex post facto* laws.[12] *See also, United States ex rel. Heacock v. Myers*, 251 F.Supp. 773 (E.D.Pa.1966), *aff'd per curiam*, 367 F.2d 583 (3d Cir. 1966), *cert. denied*, 386 U.S. 925, 87 S.Ct. 900, 17 L.Ed.2d 797 (1967); *United States ex rel. Brown v. Pennsylvania Board of Parole*, 309 F.Supp. 886 (E.D.Pa.1970); *Gomori v. Maroney*, 196 F.Supp. 190 (W.D.Pa.1961), *aff'd*, 300 F.2d 755 (3d. Cir. 1962). In view of the foregoing authorities, the Court finds petitioner's contention without merit.

Petitioner also challenges the Parole Board's jurisdiction to recommit him as a convicted parole violator. The facts of the instant case raise two jurisdictional issues, the most striking of which is the Board's authority to declare petitioner delinquent on parole. As previously noted, the Board did not administratively declare petitioner delinquent on parole until August 20, 1974, two days *after* the expiration date of his maximum sentence (August 18, 1974). The Board's jurisdiction to do so is crucial to petitioner's case, for if the Board had no such authority, then petitioner would not have been "delinquent on parole" within the meaning of 61 P.S. § 331.21a(a) when he committed the robbery in Monroe County on August 25, 1974, and therefore, would not be subject to being recommitted as a convicted parole violator under the provisions of 61 P.S. § 331.21a(a).

Respondent's authority to declare petitioner delinquent on parole after his maximum term had expired on August 18, 1974, presents an arguable issue for petitioner to present to the *state* courts. However, it does not present any grounds for relief in this action. The issue was not raised in petitioner's complaint in mandamus before the Commonwealth Court, nor was it addressed in respondent's brief in support of its preliminary objections to petitioner's complaint. Indeed, it does not appear that the relevant facts were even presented to the Commonwealth Court.[13] Consequently, petitioner has not exhausted state remedies with respect to the issue, *see Picard v. Connor, supra* (federal issue must

8. *United States ex rel. Harbaugh v. Commonwealth of Pennsylvania*, 267 F.Supp. 948 (W.D. Pa.1967); *United States ex rel. Kloiber v. Myers*, 237 F.Supp. 682 (E.D.Pa.1965); *United States ex rel. Horne v. Pennsylvania Board of Parole*, 234 F.Supp. 368 (E.D.Pa.1964).

9. *United States ex rel. Lawson v. Cavell*, 425 F.2d 1350 (3d Cir. 1970); *United States ex rel. Kloiber v. Myers, supra; United States ex rel. Horne v. Pennsylvania Board of Parole, supra.*

10. *United States ex rel. Kloiber v. Myers, supra; United States ex rel. Horne v. Pennsylvania Board of Parole, supra.*

11. *United States ex rel. Lawson v. Cavell, supra.*

12. *United States ex rel. Kloiber v. Myers, supra.*

13. The Commonwealth Court apparently decided the case before it on briefs and without the benefit of such information as was presented to this Court in respondent's Supplemental Information (Document 22). The information before the Commonwealth Court indicated that petitioner was on parole on August 25, 1974, *see Choice, supra*, 357 A.2d at 242, whereas he was actually either delinquent on parole or no longer on parole at all.

have been "fairly presented to the state courts"); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976) (same); *United States ex rel. Trantino v. Hatrack*, 563 F.2d 86 (3d Cir., filed August 1, 1977), and the Court will not address it.[14]

Assuming without deciding that petitioner's maximum sentence was properly extended from August 18, 1974 to December 13, 1974, a second jurisdictional issue is raised: whether petitioner was a "parolee under the jurisdiction of the Pennsylvania Board of Parole," within the meaning of 61 P.S. § 331.21a(a), after December 13, 1974. Petitioner contends that he was not. State remedies have been exhausted with respect to this issue. *See* page 295 *supra.*

Under 61 P.S. § 331.21a(a), respondent has the discretion to recommit as a convicted parole violator any parolee under its jurisdiction who, while on parole or delinquent on parole, commits a crime punishable by imprisonment and is thereafter convicted of that crime. *See* note 7 *supra.* Recommitment is dependent upon the parolee's conviction for the crime committed while on parole. Conviction may occur long after the expiration of a parolee's maximum term. Consequently, Pennsylvania courts have held that if a parolee commits a crime on parole and is thereafter convicted of that crime, he may be recommitted under 61 P.S. § 331.21a(a) even if he is not convicted until *after* the expiration of his maximum term. *Commonwealth ex rel. Hall v. Board of Probation and Parole*, 3 Pa. Commw.Ct. 435 (1975).[15] In particular, the Commonwealth Court held that the Board loses the right to legal custody of a parolee upon the expiration of his maximum term, but that it reacquires the right to legal custody *sua sponte* upon the parolee's con-

viction for the crime committed while on parole. *Id.* at 442–43. One of the policies underlying the decision is that a contrary holding would encourage parolees to delay their trials until after the expiration date of their maximum terms in an effort to avoid recommitment. *Id.* at 444.

The Commonwealth Court further held that the Board's administrative action in lifting its detainer on the expiration date of a parolee's maximum sentence was irrelevant to its power to recommit a parolee after his conviction. *Id.* at 443. This latter holding means that the Board does not have to take any administrative action within the parolee's maximum term in order to retain "jurisdiction" over him or to recommit him later as a convicted parole violator; it simply has to await the parolee's conviction, and thereafter, to act with some reasonable degree of promptness to exercise its reacquired jurisdiction. *Id.* at 446–47.

Under *Hall,* the Board reacquired "jurisdiction," i. e., the right to legal custody, of petitioner on January 9, 1975, the date on which he was convicted of the robbery in Monroe County. Therefore, under *Hall,* the Board had "jurisdiction" to relodge its detainer on January 21, 1975, to give petitioner a revocation hearing on February 27, 1975, and to recommit him on March 11, 1975.

The Commonwealth Court's determination that the Pennsylvania Board of Probation and Parole *automatically* reacquires jurisdiction of a parolee upon the parolee's conviction for crime committed while on parole and regardless of the Board's prior administrative action in lifting its detainer does not appear to raise any constitutional issue. Rather, the jurisdic-

---

14. Therefore, if petitioner wishes to raise this jurisdictional issue, he must present it in the *state* courts. If he does present the issue to the state courts, with the assistance of counsel, if possible, petitioner should raise the facts which were not previously before the Commonwealth Court, that is, the fact that Parole Specialist Largent recommended that the Board's interest be closed as of August 18, 1974, *see* note 6, supra, and that the Board did not declare him

delinquent until two days after the expiration of his maximum sentence.

15. Pennsylvania courts continue to rely on *Hall. See Choice v. Pennsylvania Board of Probation and Parole*, 24 Pa.Cmwlth. 438, 357 A.2d 242 (1976); *Kuykendall v. Pennsylvania Board of Probation and Parole*, 26 Pa.Cmwlth. 234, 363 A.2d 866 (1976); *Pyatt v. Commonwealth Board of Probation and Parole*, 30 Pa. Cmwlth. 580, 374 A.2d 755, 756 n.1 (1977).

tion of the Pennsylvania Board of Probation and Parole appears to be a matter of state law. Since it is not the province of a federal habeas court to re-examine questions of state law, *Rose v. Hodges,* 423 U.S. 19, 22, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975), and since the Commonwealth Court's determination does not appear to be an "obvious subterfuge to evade consideration of a federal issue," *Hallowell v. Keve,* 555 F.2d 103, 107 (3d Cir. 1977), this Court will not review the matter.

Accordingly, petitioner is not entitled to habeas corpus relief. The respondent's motion to dismiss will be granted.