Brooks et al., Appellants, *v.* Conston et al., Appellants.

258

Argued January 11, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

reargument refused, April 10, 1950.

*Laurence H. Eldredge,* with him *Norris, Bell, Lex, Hart & Eldredge,* for plaintiffs.

*John D. M. Hamilton,* with him *Thomas E. Comber, Jr., George Wharton Pepper, Hirsh W. Stalberg, Harry Shapiro, Shapiro, Conner, Rosenfeld & Stalberg and Pepper, Bodine, Stokes & Hamilton,* for defendants.

OPINION BY Mr. Justice HORACE STERN, March 20, 1950:

This is the third time this case has come before us. Previous appeals are reported in 356 Pa. 69, 51 A. 2d 684 and 359 Pa. 141, 58 A. 2d 463. Plaintiffs sued in equity to rescind their sale to defendant Harry Conston of a chain of retail millinery stores and to obtain an accounting. The facts are so fully set forth in the

opinion by Mr. Justice ALLEN M. STEARNE on the first appeal that it is unnecessary to repeat them here. It is important to point out, however, that we there held that a confidential relation existed between the parties, that fraud was clearly shown, and that it was not merely "constructive" but actual fraud, that is to say, deceit intentionally and successfully practiced by Conston to induce plaintiffs to sell him their business for an unfair and inadequate consideration. We ordered that the court below should enter a decree granting the prayer of plaintiffs' bill for an accounting of the profits made by defendants from their operation of the stores. Accordingly such a decree was entered; testimony was heard by an auditor appointed by the court; an accounting was had; the court sustained some and dismissed others of the exceptions filed by the parties to the auditor's report and entered a final decree from which both parties have now appealed.

We shall consider first the questions raised by plaintiffs.

1. When, in 1941, the business was originally acquired by Conston there were nine stores. He turned them over to a corporation which he organized under the name of Lee Stores, Inc., some of the stock of which he gave to his wife and some to his son. During the course of the subsequent operation of the business three of the original stores were closed and five additional ones were added to the chain, but the enterprise was at all times a unified one. There was a central stockroom from which all the stores were supplied with merchandise; there was a central office the personnel from which served all the stores; the bookkeeping and accounting work was all done at that office and the books and records were kept there; the receipts from all the sales were deposited to the credit of the defendant corporation and the general expenses of the enterprise were allocated to the different stores; economies were effected

in the operation of each of the stores by reason of their being part of a chain, and the merchandise was no doubt purchased at a lower cost than would have been possible if each store had been an independent unit under separate ownership. It is therefore obvious that in accounting for the profits of the business defendants must account for the profits made in *all* of the stores whether originally acquired or subsequently added, and, for the same reasons, they are entitled to a deduction for the losses incurred in any of them. The court, however, refused to allow plaintiffs the profits made in the operation of a store at 901 Market Street on the ground that that store had not been opened by the use of any profits made in the original stores. The uncontradicted testimony, however, shows that all of the merchandise and assets invested in 901 Market Street were taken from the other stores; the fixtures and equipment were paid for out of the resources of the general business; neither Conston nor any one on his behalf contributed any capital whatever for that purpose; (it may be stated parenthetically that he never made a contribution to the business for *any* purpose). It is true that Conston *loaned* the corporation $10,000 which may have been used in whole or in part in connection with the expenses attendant upon the alteration of the store front and for furniture and fixtures (which, however, is denied by plaintiffs), but this was not a capital contribution and it was either repaid to him or he is entitled to its repayment the same as any other creditor of the business. The store at 901 Market Street was treated as part of the chain the same as all other stores; the profits there earned were reported in income tax returns as part of the profits of the corporation and later of the Lee Stores Company, which was a partnership consisting of Conston, his wife and his son, organized by him in 1944 to take over the business of Lee Stores, Inc. To support plaintiffs' claim it was not necessary for them

to prove that *profits* made in the other stores were used to start this store; it is sufficient that the *assets* of the original stores were so employed. Plaintiffs are entitled to the fruits of the use of property which, in equity, continued to be theirs throughout the period of defendants' operation. We hold, therefore, that the account should be revised to include the profits made at 901 Market Street. By the same token defendants should be credited with the loss sustained in the store operated at 16 South Broad Street, Trenton, for which, apparently, they were not granted an allowance.

2. One of the new stores opened by defendants was at 938 Market Street, replacing a store at 926 Market Street the lease of which had expired. The building at 938 Market Street had been purchased a year or two before by the DeGray Corporation, the stock of which was held by Conston, his wife and his son, but Conston was the real owner. In the accounting for the profits of this store the court approved a claim for rent to the DeGray Corporation in the amount of $35,000 for the period during which the store was operated. Plaintiffs argued that to allow the full rental value of the property instead of merely the carrying charges (which amounted to $16,560.80) would be to permit Conston to profit indirectly from his original wrongdoing. We see no merit in this contention. As bona fide owner of the property DeGray Corporation could presumably have obtained the same amount of rent from any other tenant, and it would be unduly penalizing it to deprive it of something which was not in any way the fruit of the fraud committed by Conston in connection with his acquisition of plaintiffs' stores. We are of opinion that DeGray Corporation is entitled to the rent which the court allowed it.

3. It appears that while the business was being operated by Lee Stores, Inc. there was paid to Conston and to his wife the sum of $100 each per week for the

services rendered by them respectively, Conston as the manager of the enterprise and his wife as buyer of the merchandise. After the ownership of the business was changed from corporation to partnership no further payments were made to them nor were they credited on the books with any salaries, but, in the accounting, defendants claimed credit not only for these salary payments made by the corporation but for the estimated value of the services of Conston and his wife to the partnership, viz., $15,000 a year for Conston and $5,000 a year for his wife, making a total claimed deduction for Conston's salary of $60,306.60 and his wife's salary of $26,139.95. The court approved these allowances. Although the amounts seem high in view of the fact that Conston operated another extensive business of his own and did not give all of his time to the affairs of Lee Stores Company, and in view of the further fact that Mrs. Conston's services were merely incidental to similar work she performed for her husband's business and for which she received a substantial salary, the auditor found, on testimony presented by defendants, that the amounts claimed were fair and reasonable, and the court accepted that finding. Plaintiffs insist that no compensation whatever should have been allowed. As far as the wife is concerned there is nothing in the record to indicate that she was a party to her husband's fraud or cognizant of it and therefore there is no reason why she should not be regarded as any other employe of the business and her reasonable compensation allowed as a deductible expense. As to Conston, it is true that in *Callaghan v. Myers*, 128 U. S. 617, where the defendant had infringed on the plaintiff's copyright, it was held that in an accounting by the defendant for profits no deduction should be allowed him for his services in conducting his business. The Court said (p. 664) "We do not think that the value of the time of an infringer, . . . while he is engaged in violating the rights of

the plaintiff, is to be allowed to him as a credit, and thus the plaintiff be compelled to pay the defendant for his time and expenses while engaged in infringing the copyright." It has likewise been uniformly held that the value of the services expended by one who consciously wronged the plaintiff by indulging in unfair competition or in the infringement of a patent should not be deducted from the plaintiff's damages, for to do so would be to compel the latter to pay the defendant for wronging him: see Restatement, Torts, §748, comment e. The present, however, is not such a case, nor is it analogous to one in which a trustee who is unfaithful or negligent in the management of the trust is refused compensation for his services. The wrong that Conston committed was in his original acquisition of the stores, not in his operation of them; that operation was not in competition with, or to the detriment of, or in hostility to, some other business of plaintiffs, nor will it ultimately cause them any loss; on the contrary it has considerably enhanced the value of their subsequently returned property; while Conston did not, of course, realize it at the time, he was in fact, in conducting the business, not working against, but for, plaintiffs' interests. Actions of restitution are not punitive: Restatement, Restitution, chapter 8, topic 2, introductory note p. 596. In *East and West Coast Service Corporation v. Papahagis (No. 1)*. 344 Pa. 183, 25 A. 2d 339, where the defendant committed a breach of trust by which he obtained a checking concession at a hotel which he should have acquired for his principal, it was held that, in accounting for the profits he earned in the operation of the concession, he was entitled to reasonable compensation for the time and labor he spent in its management. While, ordinarily, a person guilty of fraud is not to be allowed profits or benefits derived therefrom in whatever form, we are of opinion that where, as here, his services have greatly increased the value of the

property which he fraudulently acquired, and the fruits of his management ultimately accrue to the rightful owner, an allowance may properly be made for the service rendered if, in the discretion of the court, the circumstances in the particular case so warrant. We therefore conclude that the allowances made by the court for compensation to Conston and his wife for services rendered during defendants' operation of the stores should not be disturbed.

4. The court erroneously decreed that the auditor's fee should be "paid equally by both parties." The accounting was made necessary only by Conston's wrongdoing, and the litigation has proved that plaintiffs were entitled to a recovery considerably in excess of that admitted by defendants to be due. Under such circumstances all the costs of the accounting, including the auditor's fee, should have been imposed upon defendants.

This brings us to the questions raised by defendants.

1. Defendants sought a deduction in the sum of $52,587.29 for income taxes paid by Conston on the profits earned during the course of their operation of the business. This credit was properly disallowed by the court. Whether one who is merely a "constructive" trustee or is guilty of a "constructive" fraud could properly claim such an allowance need not here be considered inasmuch as we held in the original appeal in this case that Conston was guilty of actual fraud and intentional deceit. The authorities are uniform to the effect that a conscious wrongdoer is not entitled to an allowance for income taxes on profits made by him in connection with his operation of a business which he improperly acquired. In *L. P. Larson, Jr., Co. v. William Wrigley, Jr., Co.*, 277 U. S. 97, it was held, in an opinion by Mr. Justice HOLMES, that in accounting for profits the defendant was not entitled to deduct income taxes if his wrongdoing was conscious and deliberate; it was pointed out that the plaintiff who was injured by

the defendant's conduct would be obliged to pay his own income tax on the profits when he received them by way of restitution from the defendant and therefore, if such a deduction were allowed, the plaintiff would be paying *double* income taxes on the profits to which he was entitled. It may be added that plaintiffs here may be obliged to pay income taxes on the profits for the year in which they receive them from defendants and thus incur liability for a greater tax than if they had acquired them over the course of the years during which the business was being operated. The court properly disallowed the claim for a credit for income taxes.

2. It appears that the building at 940 Market Street in which was operated one of the stores originally acquired by Conston was purchased in 1944 by Lee Stores, Inc. The court ordered defendants to convey title to this property to plaintiffs. It was bought for a cash payment of $59,748.11 subject to a purchase-money mortgage of $90,000. Considerable testimony was taken by the auditor in an attempt to determine the source of the money paid. The auditor found as a fact, on amply supporting evidence, that it was money that had been made from either the conversion or use of the assets originally acquired by defendants from plaintiffs and accordingly that the investment in the building was made for plaintiffs' account; therefore they were entitled to have the property conveyed to them. The court approved this finding and the conclusion based upon it, and we find no error in its decision. While defendants admit that the $59,748.11 was paid out of the cash reserves of Lee Stores, Inc. they claim that it did not represent profits of the business; it was not necessary, however, for plaintiffs, in order to establish their claim to the building, to prove that it was bought out of profits; it is sufficient that the purchase money was an asset of the business and therefore, from the viewpoint of equity, the property of plaintiffs. It is merely

266

a matter of tracing trust funds, and plaintiffs are clearly entitled, at their election, to take the property in which their money was invested. Of course, as the decree of the court provided, defendants, upon making conveyance of the title, should be credited with the amount of the cash payment used to purchase the property and already accounted for by them in the calculation of the profits; also with payments, if any, made by them on account of the principal of the purchase-money mortgage, payments of interest on the mortgage, and payments of taxes, water rents, insurance and repairs, together with appropriate interest on all such payments. Since the property equitably belonged to plaintiffs, defendants were properly held disentitled to any allowance for depreciation, or for rent during the time they operated the store there, and they must account for any income they received from the property since they turned the store back to plaintiffs and until they make conveyance of the title as directed by the court.

The record is remanded to the court below with direction to amend the decree and to proceed in accordance with this opinion; costs to be paid by defendants.