**BUCK HILL FALLS COMPANY,**
Appellee,

v.

**Clifford PRESS and Elizabeth
L. Sawyer, His Wife,**
**Appellants.**

**Buck Hill Falls Company, Appellant,**

v.

**Clifford Press and Elizabeth L.
Sawyer, His Wife Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 13, 2001.
Filed Jan. 28, 2002.

George W. Westervelt, Jr., Stroudsburg, for Press and Sawyer.

James A. Swetz, Stroudsburg, for Buck Hill.

Before JOYCE, OLSZEWSKI and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 These are cross-appeals from a final decree dated April 16, 2001, in the Monroe County Court of Common Pleas granting, in part, the request of Appellant, Buck Hills Falls Company, for a permanent injunction to stop Appellees, Press and Sawyer, from maintaining chickens on their property.[1] Appellees cross-appeal the trial court's order limiting the number of chickens on their property to five, seeking instead allowance to keep eleven chickens at any one time. For the reasons set forth below we reverse.

¶ 2 Buck Hills Falls Corporation ("BHFC"), is a publicly owned Pennsylvania for-profit development company that owns the common areas and facilities in Buck Hills Falls. On September 8, 1992, Appellees, Clifford Press and Elizabeth Sawyer, purchased a home in the Buck Hills Falls development, a residential community where many of the residents, including Appellees, have vacation homes.[2] Since 1998, Appellees have raised bantam chickens on their property. During the summer of 1998 Appellees had as many as twenty chickens, including a number of roosters. To house the flock, Appellees built a permanent metal structure which extends beyond the outside wall of the house by four feet.

---

* Retired Justice assigned to Superior Court.

1. Buck Hills Falls Company was the plaintiff in the trial court and as a result is deemed the Appellant pursuant to Pa.R.A.P. 2136 for purposes of this appeal.

2. Appellees' primary residence is in New York City.

¶3 Beginning in the fall of 1998, the General Manager of BHFC received complaints from community members regarding the roosters' crowing in the early morning, a foul odor emanating from the chickens, and their ceaseless clucking. As a result of such complaints, the roosters were removed from Appellees' property, leaving only hens.

¶4 The Buck Hills Falls development, including Appellees' property, is governed by two restrictive covenants [hereinafter "Poultry Covenant" and "Nuisance Covenant" respectively] which provide in pertinent part:

Section 3.12 Livestock, Animals, Pets. No livestock, animals, or poultry of any kind shall be raised, bred or kept on any Existing Residential Property except dogs (which shall be kept on a leash when and if outside the Living Unit) and other household pets which may be kept provided they are not raised, bred, kept or maintained for commercial purposes. No noxious or offensive activity shall be caused on or upon any Lot or Living Unit, nor shall anything be done or be placed in or on the same which may be or become a nuisance, or cause unreasonable embarrassment, disturbance or annoyance to any other Owner in his enjoyment of his Lot or Living Unit.

(Trial Ct. Op. at 3). In addition, Appellees' property is further restricted, until January 1, 2050, by a covenant in its chain of title which provides in pertinent part:

And the said Grantee, for herself, her heirs, and assigns, further covenants and agrees to and with the said Grantor, its successors and assigns, that ... no barn, stable, cow-shed, chicken-house, pig-pen, detached privy, or other outbuilding, shall ... be erected or constructed ... upon any part of the hereby granted premises.

(Id. at 4) [hereinafter "Chicken House Covenant"]. Appellant urged Appellees to remove the chickens from their property contending that Appellees were in violation of these covenants. Appellees refused.

¶5 On August 31, 1999, Appellant filed a Complaint in equity as well as a petition for a preliminary injunction requesting both that the court restrain Appellees from keeping poultry, and that attorney's fees and costs be awarded. Appellee Press, who served as a member of the BHFC Board of Directors from July, 1994 until September, 1999, was removed because of the conflict of interest that arose from this litigation. Appellees counterclaimed alleging that the Board of Directors of Buck Hills Falls Company illegally removed Appellee Press from the Board.[3]

¶6 After a hearing, the petition for a preliminary injunction was denied by Order dated February 24, 2000. In the Order, the court ruled that "the activity sought to be restrained [was] actionable and an injunction [was] reasonably suited to abate such activity." (Preliminary Injunction Conclusions of Law, 2/24/00, at 6). However, the court denied the petition, finding that Appellant failed to establish that a preliminary injunction would prevent immediate and irreparable harm during the winter months when the chickens were not outside. A hearing date was scheduled to adjudicate the petition for a permanent injunction.

¶7 On April 26, 2000, pursuant to Appellees' motion the trial judge recused himself, and another judge was assigned to the matter. By Order dated August 22, 2000,

**3.** The trial court's finding that Appellee Press was properly removed from the BHFC Board of Directors is not before us on appeal.

both the petition for a permanent injunction and Appellees' counter-claim were denied. After hearing argument on the parties' post trial motions, the trial court filed an amended *decree nisi* on December 29, 2000, which granted, in part, Appellant's petition for a permanent injunction by enjoining Appellees from maintaining any roosters and more than five bantam hens on their property. On April 16, 2001, a decree was entered making final the December 29, 2000, amended *decree nisi*. On June 12, 2001, the lower court stayed its final decree of April 16, 2001, pending this appeal, ruling that ten hens, but no roosters, could be kept on the property.

■ ¶ 8 When reviewing a final decree in equity we are required to determine whether the trial court made an error of law or committed an abuse of discretion. *See Lilly v. Markvan*, 563 Pa. 553, 763 A.2d 370, 372 (2000). "If a decision is based on 'findings which are without factual support in the record,' however, the reviewing court will not hesitate to reverse." *Id.* (citing *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 559 (1999)). An abuse of discretion occurs when a judgment is manifestly unreasonable. *Van Dine v. Gyuriska*, 552 Pa. 122, 713 A.2d 1104, 1105 (1998).

¶ 9 All but one of Appellant's issues on appeal relate to the trial court's interpretation of the restrictive covenants affecting Appellees' property. However, Appellant first contends that the coordinate jurisdiction rule, contained in the "law of the case" doctrine, prohibited the lower court from addressing its sister court's preliminary injunction ruling that chickens are not pets. In its Opinion denying Appellant's petition for a preliminary injunction, the trial court found that although Appellees' practice of keeping chickens on their property was actionable, the petition was not timely in the winter months when the chickens were kept indoors. Appellant now argues that as a result of that Opinion, the question of whether the chickens are pets was settled in the negative and therefore could not be revisited by the lower court during the hearing on the permanent injunction.

■ ¶ 10 It is well settled that courts of the same jurisdiction cannot overrule each other's decisions in the same case. *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 425 (1997) (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). The coordinate jurisdiction rule falls within the "law of the case" doctrine and promotes finality in pretrial proceedings and judicial efficiency. *Id.* In order to determine whether the coordinate jurisdiction rule applies we must examine the procedural posture of the rulings in question. "Where the motions differ in kind, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Goldey v. Trustees of the Univ. of Pennsylvania*, 544 Pa. 150, 675 A.2d 264, 267 (1996).

■ ¶ 11 The object of a preliminary injunction is to maintain the status quo until the parties' rights can be considered and determined after a full hearing for a permanent injunction. *Cappiello v. Duca*, 449 Pa.Super. 100, 672 A.2d 1373, 1375 (1996). The scope of a preliminary injunction ends when a petition for a permanent injunction is either granted or denied. *McMullan v. Wohlgemuth*, 444 Pa. 563, 281 A.2d 836, 841 (1971). In addition, whether a preliminary injunction is granted or denied has no effect on whether a final, permanent injunction will ultimately be issued. *Soja v. Factoryville Sportsmen's Club*, 361 Pa.Super. 473, 522 A.2d 1129, 1132 (1987).

¶ 12 In the instant case, the fact that the judge presiding over the preliminary injunction stage of proceedings indicated that Appellant would be successful in its petition for a permanent injunction did not set a precedent for the replacement judge to follow. In contrast to a permanent injunction, a decision regarding a preliminary injunction is not binding for purposes of a final adjudication. *Humphreys v. Cain*, 83 Pa.Cmwlth. 176, 477 A.2d 32, 35 (1984). Accordingly, this claim fails.

¶ 13 Appellant's first issue relating to the restrictive covenants concerns the interpretation of the word "poultry." Specifically, Appellant challenges the trial court's interpretation of the Poultry Covenant and the court's failure to enjoin Appellees from keeping poultry on their property, despite finding that the chickens were poultry. The covenant in question prohibits "... poultry of any kind ..." on Appellees property. *See* Poultry Covenant, *supra*. Appellant argues that the Poultry Covenant is clear and unambiguous, and, since Appellees' chickens are poultry, they are prohibited. We agree.

¶ 14 We begin by noting that in interpreting the foregoing restrictive covenant, the intention of the parties at the time the restrictive covenant was entered into governs. *Baumgardner v. Stuckey*, 735 A.2d 1272, 1274 (Pa.Super.1999) (citing *Baederwood, Inc. v. Moyer*, 370 Pa. 35, 87 A.2d 246, 248 (1952)). Under Pennsylvania law, land use restrictions, while not favored, are enforceable. *Grasso v. Thimons*, 384 Pa.Super. 593, 559 A.2d 925, 927 (1989). In addition, land use restrictions must be strictly construed and will not be expanded by implication. *Baumgardner, supra; see also Grasso, supra.*

¶ 15 Instantly, the trial court concentrated solely on whether Appellees' chickens were pets, reasoning that, although the chickens were poultry, they were not prohibited because Appellees treated them as pets. In determining whether the covenant prohibits Appellees from maintaining chickens on their property we must consider the express language of the covenant. *See Gey v. Beck*, 390 Pa.Super. 317, 568 A.2d 672, 675 (1990) (stating "[i]n construing a restrictive covenant, we must ascertain the intention of the parties by examining the language of the covenant in light of the subject matter thereof ...").

¶ 16 The Poultry Covenant specifically states that "No livestock, animals or poultry of any kind shall be raised, bred or kept on any Existing Property except dogs ... and other household pets ...." The word "poultry" is understood to mean "all types of chickens ...." 3 Pa.C.S.A. § 1402. In addition, the words "poultry" and "chicken" are often interchangeable in everyday use and in case law. *See Rieck–McJunkin Dairy Co. et al. v. School Dist. of Pittsburgh et al.*, 362 Pa. 13, 66 A.2d 295, 296 (1949); *see also Commonwealth v. Wiand et al.*, 151 Pa.Super. 444, 30 A.2d 635, 639 (1943). From its plain meaning, we find that the poultry prohibition contained in the restrictive covenant is quite clear, and was meant to prohibit Buck Hills Falls community members from maintaining chickens of any kind for any reason. Accordingly, we hold that the trial court made an error of law, and that by keeping chickens, Appellees are in violation of the restrictive covenant prohibiting poultry on their property.[4]

¶ 17 Appellant also argues in the alternative that even if the court did not

---

4. We note that the term "livestock" is also expressly prohibited under the covenant. "Livestock" is defined as including "horses, cattle, pigs, and sheep, and also poultry ...." RESTATEMENT (SECOND) OF TORTS § 504, Comment b (1976).

find poultry to be strictly prohibited, it erred by failing to make any distinction between the definitions of "pet" and "household pet" under the terms of the Poultry Covenant. However, Appellees insist, and the trial court agreed, that since Appellees' children treat the chickens as pets, then they are "household pets" for purposes of the covenant. While the phrase "household pet" is somewhat ambiguous, nevertheless the language prohibiting poultry makes it clear that chickens were not intended to be included in the covenant's meaning of the phrase "household pet."[5] Keeping in mind that the rules of construction require us to examine the language of the covenant in light of the subject matter surrounding it, we conclude that the trial court erred in finding that Appellees' chickens are household pets.

¶ 18 Next, Appellant contends that the trial court erred in failing to enforce the restriction against chicken houses contained in the Chicken House Covenant. Appellees argue that the Chicken House Covenant only prohibits "outbuildings" on the property, and since their structure is attached to the house, it is exempt from the prohibition. We disagree.

■ ¶ 19 The language of this covenant is very clear in stating ". . . no barn, stable, cowshed, chicken house . . . shall . . . be erected or constructed upon any part of the hereby granted premises." Using the standard that we must "give effect to the intention of the parties . . . the objects they apparently had in view, and the nature of the subject matter," *Estate of Hoffman v. Gould*, 714 A.2d 1071, 1073 (Pa.Super.1998), the use of the word "outbuilding" in the covenant does not make the prohibition against chicken houses ambiguous. We need not decide what the parties may or may not have meant when using the word "outbuilding" when the definition of "chicken house" is obvious. *See Hoffman, supra* (stating that restrictive covenants are to be strictly construed and not extended by implication). The ordinary usage and plain meaning of the phrase "chicken house," as well as common sense, require that a structure built to house chickens or poultry be defined as a "chicken house." As the aforementioned covenant clearly states, chicken houses are prohibited on Appellees' property. Therefore, we find that here too the trial court made an error of law, and that Appellees are in violation of the covenant prohibiting the construction of a chicken house on their property.

¶ 20 Because we conclude that keeping chickens on Appellees' property is prohibited, we need not address Appellant's claim that the trial court erred by holding that five chickens on Appellees' property does not create a nuisance. In addition, because we conclude that chicken houses are prohibited under the Chicken House Covenant we will not address Appellant's argument that the trial court erred in finding that BHFC's enforcement of the Chicken House Covenant was arbitrary.

¶ 21 As a result of our conclusion that keeping any chickens on Appellees' property violates the restrictive covenant, Appellees' cross-appeal arguing that they should be able to keep eleven chickens on the property is denied.

¶ 22 Therefore, we reverse the trial court's final decree and remand for the sole purpose of determining whether Appellant is entitled to attorney's fees.

---

5. Despite their insistence that the chickens are household pets, Appellees do not regularly take the chickens to their primary residence in New York City and never take the whole flock. Instead, Appellees have hired the regrettably named Mr. Fox to care for the chickens at Buck Hills Falls in their absence.

¶ 23 Decree reversed. Case remanded. Jurisdiction relinquished.