J-A22021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GEORGE N. KARANDRIKAS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LOUIS N. SKEPARNIAS, | : | |
| | : | |
| Appellant | : | No. 2098 MDA 2013 |

Appeal from the Order Entered November 6, 2013,
In the Court of Common Pleas of York County,
Civil Division, at No. 2010-SU-002514-01.

| | | |
|---|---|---|
| GEORGE N. KARANDRIKAS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LOUIS N. SKEPARNIAS, | : | |
| | : | |
| Appellant | : | No. 344 MDA 2014 |

Appeal from the Judgment Entered January 29, 2014,
In the Court of Common Pleas of York County,
Civil Division, at No. 2010-SU-002514-01.

BEFORE:  PANELLA, SHOGAN and FITZGERALD*, JJ.

MEMORANDUM BY SHOGAN, J.:              **FILED OCTOBER 20, 2014**

Louis N. Skeparnias ("Appellant") appealed the November 6, 2013 order appointing a receiver and the January 29, 2014 judgment entered against him.  We consolidated the appeals *sua sponte* on March 27, 2014. Upon review, we affirm the order and the judgment.

---

*Former Justice specially assigned to the Superior Court.

The matter before us began with a complaint filed by George Karandrikas ("Karandrikas"), who entered a joint venture agreement with Appellant on July 1, 1996, for the development of real estate in York County, Pennsylvania. Karandrikas sought $1.67 million in damages, claiming Appellant breached the joint venture agreement and his fiduciary duty to the joint venture through self-dealing and by improperly dissipating funds. Specifically, Karandrikas averred that Appellant wrongfully hired and paid himself and his company, Sigma Commercial Realty ("Sigma"), to manage the joint venture's properties; hired his sons' company, Genesis Maintenance, LLC ("Genesis"), as a property maintenance/security subcontractor; and abated rent for his sons' restaurant, the Sports Garden. Appellant counterclaimed for compensatory damages and legal fees based on his successful management of the joint venture. After a three-day bench trial in October 2013, the trial court found in favor of Karandrikas, awarded him $1,027,000.00 in damages plus attorney's fees, and dismissed Appellant's counterclaim. Additionally, the trial court appointed a receiver to wind up the joint venture. According to the trial court, Karandrikas' evidence was "credible and compelling," while Appellant's evidence "was not credible and, in parts, downright unbelievable." Trial Court Opinion, 1/27/14, at 4.

Appellant filed a post-trial motion containing thirty-three claims of error, which the trial court denied following oral argument on December 16, 2013. This appeal followed the entry of judgment in favor of Karandrikas. Appellant and the trial court complied with P.R.A.P. 1925.

Appellant presents the following questions for our consideration:

Did the trial court commit reversible errors and abuses of discretion:

a. Awarding plaintiff Karandrikas restitution damages in the amount of $1,027,000, where he never requested or demanded restitution damages in any pleading or at any time before, during, or even after trial?

b. Rendering judgment for plaintiff/appellee Karandrikas in the amount of $1,027,000, where he failed to prove that he sustained any damages (and admitted as much at trial)?

c. Ruling that [Appellant] "waived" his challenges to the award of contract damages for allegedly failing to "previously or timely" present his arguments regarding i) restitution damages, ii) remuneration, iii) unjust enrichment, iv) equity, and v) gist-of-the-action— without identifying the legal standards applied or the measure of those damages to support the award?

d. Contradicting the factual findings and legal conclusions of the Honorable President Judge Stephen P. Linebaugh that he made in denying the majority of plaintiff Karandrikas' motion for preliminary injunction after a hearings [sic] and extensive testimony by the parties?

e. Ruling that [Appellant] breached the parties' Joint Venture Agreement ("JV Agreement") through acts characterized as "self dealing," while ignoring the parties' modification of their JV Agreement by their course of performance?

    f. Awarding to plaintiff Karandrikas all attorneys' fees submitted at trial as reasonable, while failing to properly calculate any i) lodestar, ii) reasonable number of hours, or iii) reasonable hourly rates?

    g. Appointing a receiver at the conclusion of a bench trial where, *inter alia*: i) the plaintiff Karandrikas never requested the equitable relief for appointment of a receiver at any time before the close of witness testimony at trial, ii) no evidence concerning the appointment of a receiver was presented at trial, iii) the appointment of a receiver was not an issue tried in the bench trial or in any required hearing, iv) the request for [a] receiver was only first made in plaintiff counsel's closing argument, and v) the trial court refused defense counsel's request for permission to respond to plaintiff counsel's closing argument request for a receiver?

Appellant's Brief at 6–7 (renumbered for ease of disposition).

We reiterate that this was a nonjury trial. Our appellate role in such cases is:

> to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.
>
> > We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

***Joseph v. Scranton Times, L.P.***, 89 A.3d 251, 259–260 (Pa. Super. 2014) (quoting ***J.J. DeLuca Co., Inc. v. Toll Naval Associates***, 56 A.3d 402, 410 (Pa. Super. 2012)).

Appellant's first three issues concern the trial court's award of damages to Karandrikas. We review these issues mindful of the following standard:

> The duty of assessing damages is within the province of the [fact-finder] and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

***Hatwood v. Hosp. of the Univ. of Pennsylvania***, 55 A.3d 1229, 1240–1241 (Pa. Super. 2012) (citation omitted), *appeal denied*, 65 A.3d 414 (Pa. 2013). "The fact-finder must assess the worth of the testimony, by weighing the evidence and determining its credibility and by accepting or rejecting the estimates of the damages given by the witnesses." ***Delahanty v. First Pennsylvania Bank, N.A.***, 464 A.2d 1243, 1257 (Pa. Super. 1983) (internal citation omitted).

Appellant proffers myriad arguments in support of his challenge to the award of damages. First, Appellant complains that the trial court erred in awarding Karandrikas restitution damages because Karandrikas never

requested restitution damages; rather, he "sought compensatory damages and specific performance for breach of contract and breach of fiduciary duty." Appellant's Brief at 21; Appellant's Reply Brief at 12. Second, Appellant asserts that the trial court erred in awarding Karandrikas restitution damages because he did not incur damages, and he admitted as much at trial. *Id.* at 22. Third, citing the Honorable Stephen P. Linebaugh's conclusion that Sigma and Appellant's sons performed their work satisfactorily and at reasonable rates, Appellant argues that, even if "the affiliated contracts themselves constituted breaches of the JV Agreement, Karandrikas was not harmed and could not prove any damages arising therefrom—including for restitution." *Id.* at 23. Fourth, relying on the RESTATEMENT (SECOND) OF CONTRACTS § 344, Appellant contends that, although the trial court "awarded 'compensatory damages,' . . . restitution is the only possible measure of damages that the trial court awarded" because Karandrikas introduced no evidence of his expectation interest or his reliance interest. *Id.* at 24. Fifth, Appellant submits that Karandrikas was not entitled to restitution because he failed to prove unjust enrichment. *Id.* at 25. Sixth, Appellant complains that the trial court's award of restitution to Karandrikas was "highly inequitable" because Appellant successfully managed the joint venture. *Id.* at 26. In support of this argument, Appellant relies on *Greenan v. Ernst*, 184 A.2d 570 (Pa. 1962). Finally,

Appellant asserts that the trial court abused its discretion in denying Appellant's post-trial motion on the basis that he "waived" his challenges to the award of restitution damages. Appellant's Brief at 31–32.

In response to Appellant's restitution-based arguments, Karandrikas retorts that Appellant wrongfully attempts to re-characterize the contract damages as restitution, despite the fact that Karandrikas clearly sought to enforce the joint venture agreement and to recover compensatory damages, *i.e.*, damages appropriate to put him in the position he would have been in but for Appellant's breaches. Karandrikas' Brief at 24. Karandrikas contends that the uncontroverted trial evidence established that Appellant's unauthorized transactions damaged Karandrikas by depleting "over $1 million from the Joint Venture's assets, leaving it delinquent on its taxes and in foreclosure, despite massive cash contributions from Karandrikas." *Id.* at 25–31. Additionally, Karandrikas challenges Appellant's argument that he is entitled to compensation for his efforts on behalf of the joint venture by distinguishing *Greenan*. *Id.* at 31–34. Karandrikas also asserts that the trial court's ruling that Appellant "breached the terms of the JV Agreement by engaging in self-dealing was supported by the express language of the JV Agreement and by Pennsylvania law." *Id.* at 34–38. Finally, Karandrikas argues that competent evidence supports the trial court's conclusion that

Appellant breached his fiduciary duty to the joint venture by engaging in self-dealing transactions. *Id.* at 38–44.

The trial court itemized its award of damages on the record:

> Well, having found a breach of contract, breach of fiduciary duty, we are going to award damages.
>
> It is, frankly, tempting to just say, fine, all the figures they asked for they get because the conduct was so outrageous. However, the law really doesn't permit that. You don't get a blank check just because the other guy breached the contract. Damages have to be provable. They have to be related. And I have tried to analyze each one of these things with that in mind.
>
> I should also say, [Appellant's counsel] made reference in his closing to if there is some dissolution, there will be some adjustments in the accounting for the winding down and dissolution of the Joint Venture. While at first blush that may seem appealing, I don't have any information at the moment whether there is going to be anything out of the Joint Venture from liquidating the assets. And I am confronted with Mr. Karandrikas' claim in the lawsuit and his evidence of damages.
>
> Now, let me start with the most problematic first. And in my mind, the most problematic first was the foreclosure tax sale fees, some $48,000. I didn't hear any evidence as to what year the tax bill wasn't paid. Now, generally speaking, it takes two years to get to a tax upset sale. And I believe I recall [Appellant's] testimony that paying the taxes and the insurance was just like paying the bank, because if you didn't, you defaulted on the loan and that was the same as missing a payment. But, that still doesn't help me when I try and recall all of his testimony. Now, somewhere I thought there was a tax notice. But that might have been, frankly, from the petition to stay this tax sale that I was presented with a couple of weeks ago. And there is a tax claim. I was 27 on the tax claim listing. But, all it was was -- all it was was the circle of numbers -- I guess maybe it was 2011, if I look at the year bill-- I guess that is there. 2011, 2012.

Well, it all may be moot as far as some accounting because the tax sale was scheduled. I stayed it. I am not going to stay it forever. So, I don't know what's going to happen with that tax bill.

But, since there were funds from rent and it appears that [Appellant] was even paying Sigma as of last month, my view is that a deal could have been cut with the Tax Claim Bureau for a payment schedule to make up those taxes. And that wasn't done. So, penalties and interest have been applied, and therefore, the most problematic of fees. I am going to allow that. That's the combination penalty and interest of $48,000.

With regard to the others, they are what they are. There is no dispute about the amounts.

The question does present itself as to whether or not [Appellant] should pony up half of the unpaid Sports Garden defaulted rents. What my finding is and my conclusion is that he has significantly impaired the ability to collect that money. We had testimony that one of the guarantors is living out of state. The other lives out of county. So, it is going to be a tremendous effort to track them down and try to do anything to collect that money.

And the license is problematic. That is still in the corporate name. But, something is going to have to be done to get the license back into the Joint Venture entity. And I am not sure how that is impaired by the delay.

* * *

The loan financed amount, $146,000 there. My problem with that is that was a voluntary act taken for, I am going to say, business, personal business reasons to protect other assets . . . . I don't see that as a damage resulting from a breach of the agreement. . . . So, I am not awarding $146,000. I don't find that damage relates to a breach.

* * *

So, where do we end up? . . . All I did was, I found in favor of the damages for -- I will generically identify those -- half of the payments to Sigma, half of the $25,000, half of the 11 to [Appellant's sons] Nick and John, half of the Genesis 54, half of the 48, half of the 249, half of the unpaid Sports Garden rent, and attorneys' fees of $315,000, round figure. Now, on those, my figure is $841,000.

Now, I come to finally what to do about $186,000 difference in the post-injunction payments. Here's my bottom line on that. Is it fair not to reimburse Mr. Karandrikas when [Appellant] stopped making the payments and paid Sigma? I guess in trying to put people where they were before – [interruption in proceedings]

That's what I have decided to do. I am going to put people back where they were before.

* * *

So, if my math is correct, I am awarding damages in the mount of $1,027,000 in favor of Mr. Karandrikas and against [Appellant].

* * *

On [Appellant's] claim for his lost profits based on Mr. Karandrikas's refusal to go along with additional financing, I find against [Appellant] on that and in favor of Mr. Karandrikas.

* * *

I don't believe [Appellant paid an extra $60,000 toward the joint venture]. I believe the records that were submitted and, particularly, the accountant's report and the Exhibit 23.

N.T., 10/23/13, at 652–659.

The trial court disposed of Appellant's restitution-based arguments in

its Pa.R.A.P. 1925(a) opinion as follows:

Initially, it should be noted, in an effort to make a silk purse out of a sow's ear, successor counsel attempts to recast the case as confusion between breach of contract as opposed to unjust enrichment, damages for the breach as opposed to "restitution damages"/"remuneration", and the "equities" of the case. Counsel attempts to insert Sigma and the family affiliates as being entitled to the money they received, in an effort to justify [Appellant's] breach of the self-dealing prohibition. . . . [T]he most cursory reading of the Court's decision discloses an inescapable finding of breach of the contract and an award of damages based on the breach.

Trial Court Opinion, 1/27/14, at 6.

Upon review of the record before us, we discern no grounds for relief. As set forth above, the trial court thoroughly justified its award of damages and explained its rejection of Appellant's mischaracterization of the damages as restitution. The evidence of record supports the award, and we will not interfere with the trial court's credibility determinations. Nothing in the record suggests that the amount of damages awarded resulted from caprice, prejudice, partiality, corruption, or some other improper influence. Giving deference to the decision of the trial judge, who—sitting as the trier of fact— was in a superior position to appraise and weigh the evidence, we conclude that the verdict bears a reasonable resemblance to the damages proven by Karandrikas. Therefore, we will not upset the verdict. **Hatwood**, 55 A.3d 1240–1241.

Additionally, we agree with Karandrikas that **Greenan** is distinguishable. Therein, the trial court, sitting in equity, reviewed a

defrauded partner's claim for restitution from the self-dealing partner's estate. Affirming the trial court's grant of restitution, the Pennsylvania Supreme Court noted a distinction:

> *Restitution, not punishment, is the goal of this proceeding*. . . . While, ordinarily, a person guilty of fraud is not to be allowed profits or benefits derived therefrom in whatever form, we are of opinion that where, . . . his services have greatly increased the value of the property which he fraudulently acquired, and the fruits of his management ultimately accrue to the rightful owner, an allowance may properly be made for the service rendered if, in the discretion of the court, the circumstances in the particular case so warrant. *The circumstances in the case at bar not only warrant but demand, if equity is to be accomplished, the allowance of reasonable compensation to W. J. Healey or his estate.*

**Greenan**, 184 A.2d at 578 (quoting **Brooks v. Conston**, 72 A.2d 75, 79 (Pa. 1950)) (emphasis in original). According to the **Greenan** court, the self-dealing partner "devote[d] his skill and efforts to the successful employment of the partnership assets." **Greenan**, 184 A.2d at 578. Thus, the Supreme Court concluded, "[T]o deny [the offending partner] any compensation or allow him only nominal compensation would be most inequitable." **Id.**

Unlike the court in **Greenan**, which acknowledged the profitable consequences of the partner's self-dealing, the trial court herein credited Karandrikas' claim that Appellant's self-dealing resulted in damages. Exercising its discretion, the trial court concluded that the circumstances at

hand did not warrant compensation to Appellant. **Brooks**, 72 A.2d at 79. As discussed above, we discern no abuse of discretion.

Appellant's fourth question posits that the trial court erred in ignoring Judge Linebaugh's decision on Karandrikas' motion for a preliminary injunction, which, according to Appellant, was binding on the trial court as the law of the case. Appellant's Brief at 32; Appellant's Reply Brief at 23. Karandrikas responds that Judge Linebaugh's ruling was not binding on the trial court under Pennsylvania law. Karandrikas' Brief at 44–45. Karandrikas further contends that the trial court's findings after trial were not inconsistent with Judge Linebaugh's findings at the preliminary injunction stage. **Id.** at 47–48. Moreover, Karandrikas argues, the parties' conduct did not modify the joint venture agreement "such that Karandrikas was equitably estopped from asserting claims for breach of contract and breach of fiduciary duties." **Id.** at 49–52.

> It is well settled that courts of the same jurisdiction cannot overrule each other's decisions in the same case. **Riccio v. American Republic Ins. Co.**, 550 Pa. 254, 705 A.2d 422, 425 (1997) (citing **Commonwealth v. Starr**, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). The coordinate jurisdiction rule falls within the "law of the case" doctrine and promotes finality in pretrial proceedings and judicial efficiency. **Id.** In order to determine whether the coordinate jurisdiction rule applies we must examine the procedural posture of the rulings in question. "Where the motions differ in kind, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." **Goldey v. Trustees of the Univ. of Pennsylvania**, 544 Pa. 150, 675 A.2d 264, 267 (1996).

*Buck Hill Falls Co. v. Clifford Press*, 791 A.2d 392, 396 (Pa. Super. 2002). Additionally, we have held that a preliminary injunction is not binding for purposes of a final adjudication. *Id.* at 397 (citing *Humphreys v. Cain*, 477 A.2d 32, 35 (Pa. Cmwlth. 1984)).

The trial court disposed of this issue on the record as follows:

> There was a lot of testimony about no meetings, yes meetings, informal meetings, started to go to meetings, didn't go to meetings, threatened about meetings. The agreement provides that the managing partner is to provide information, keep the other informed. And while I don't disagree with Judge Linebaugh's [observation that] written agreements may be modified by conduct, when I read his opinion more carefully, he is addressing, I believe, the policies and procedures, because there is no evidence that the Joint Venture created written policies and procedures as discussed on Page 22. "The managing venturer shall at all times conform to policies and programs established and approved by the venturers in writing and the scope of the managing venturer's authority shall be limited to said policies and programs." And they do talk about the managing venture will at all times be subject to the direction of the venturers agreed to at a meeting or in a writing signed by both venturers. They never did that. They never did that. I believe when Judge Linebaugh is referring to policies and procedures, that modification may be what's in his mind. I don't know.
>
> But I do know that the fact that there were no written policies and procedures does not undercut the duty, the fiduciary duty of one partner as they act for the partnership in having the partnership interest utmost in mind in treating the partner with utmost fairness.

N.T., 10/23/13, at 645–646. Additionally, the trial court opined in its Pa.R.A.P. 1925(a) opinion that:

[this issue] does appear to be the linchpin of the defense. The "law of the case" argument was presented in an oral motion immediately prior to trial. [Karandrikas'] counsel had addressed such in his trial brief. We have again considered this issue and the cases cited by the parties. We find no error in our ruling denying [Appellant's] oral motion. Whether argued as collateral estopped/res judicata or the coordinate jurisdiction doctrine, the result is the same. The principles of res judicata and collateral estoppel are inapplicable to findings of the Court in the proceedings on the preliminary injunction. Santoro v. Morse, 781 A.2d 1220 (Pa. Super. 2001). A preliminary injunction concludes no rights and is a final adjudication [of] nothing. Humphreys v. Cain, 477 A.[2d] 32 (Pa. Commw. 1984). Very directly, the Superior Court has ruled "a decision regarding a preliminary injunction is not binding for purposes of a final adjudication." Buck Hill Falls Co. v. Clifford Press, 791 A.2d 392 (Pa. Super. 2002). This claim of error has no merit.

Trial Court Opinion, 1/27/14, at 7.

Upon review, we conclude that Appellant's law-of-the-case argument lacks merit. Judge Linebaugh heard and ruled on Karandrikas' request for a preliminary injunction, granting relief only "with respect to the finances of the Joint Venture." N.T., 2/7/11, at ___; Order of Court, 2/25/11, at 7. The trial court conducted a three-day trial and ruled on the merits of Karandrikas' claims that Appellant breached the joint venture agreement and his fiduciary duty to the joint venture. Because the procedural posture of the rulings in question differed, the trial court was not precluded from granting Karandrikas final relief, even though Judge Linebaugh partially denied his request for preliminary injunctive relief. ***Goldey***, 675 A.2d at

-15-

267; **Buck Hill Falls Co.**, 791 A.2d at 396. Appellant is not entitled to relief.

Appellant's fifth question challenges the trial court's findings that Appellant engaged in self-dealing. According to Appellant, the trial court erred in looking "to parol evidence—not the JV Agreement's language—to determine *Karandrikas' intent*" or understanding with regard to Appellant's management of the joint venture. Appellant's Brief at 41; Appellant's Reply Brief 21.[1] In reply, Karandrikas contends that Appellant failed to assert a timely objection to Karandrikas' testimony regarding his intent or understanding in forming the joint venture; he also posits that Karandrikas' testimony "was not inadmissible parole evidence because it did not vary from or contradict the terms of the written contract." Karandrikas' Brief at 19, 38. Karandrikas further argues that the evidence established Appellant breached the joint venture agreement's prohibition against self-dealing and, therefore, his fiduciary duty, by engaging in transactions with himself, his

---

[1] "[D]ecisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Phillips v. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014) (quoting **Stumpf v. Nye**, 950 A.2d 1032, 1035–1036 (Pa. Super. 2008)).

Contrary to Appellant's claim, we observe that the trial court examined several provisions of the joint venture agreement in considering whether Appellant engaged in self-dealing. N.T., 10/23/13, at 637–638, 639–640.

wholly owned company, Sigma, with his sons, and his sons' business—all without Karandrikas' knowledge or consent. **Id.** at 39–44.

"Under prevailing Pennsylvania law, a timely objection is required to preserve an issue for appeal." **Shelhamer v. Crane**, 58 A.3d 767, 770 (Pa. Super. 2012) (quoting **Samuel–Bassett v. Kia Motors Am., Inc.**, 34 A.3d 1, 45 (Pa. 2011)); Pa.R.C.P. 227.1(b). Moreover, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Upon review, we agree with Karandrikas that Appellant waived this challenge. The record confirms that Appellant did not object to Karandrikas' testimony about his intent or understanding with regard to Appellant's management of the joint venture. N.T., 10/21/13, at 16–27.

Appellant's sixth question challenges the trial court's award of attorneys' fees without considering any lodestar[2] or whether the number of hours and the hourly rate were reasonable. Appellant's Brief at 45; Appellant's Reply Brief at 25.[3] According to Karandrikas, Appellant waived this issue because he failed to object to Karandrikas' claim for attorney's

---

[2] In the context of this challenge, we interpret Appellant's use of the term "lodestar" to mean a standard hourly rate and number of hours against which to compare Karandrikas' claim for attorneys' fees.

[3] Awarding attorney's fees authorized by contract or statute is within the trial court's discretion; an award will not be reversed absent an abuse of that discretion. **Scalia v. Erie Ins. Exchange**, 878 A.2d 114, 116 (Pa. Super. 2005).

fees when Appellant received attorney invoices from Karandrikas weeks before trial or when Karandrikas testified about attorneys' fees during trial. Karandrikas' Brief at 20.

The trial court disposed of this issue on the record and in its Rule 1925 opinion as follows:

> The attorneys' fees, I didn't hear any dispute that they were unreasonable. The agreement does provide for attorneys' fees, as I have already recited.
>
> With regard to the general claim that the defense made for attorneys' fees, I found no provision in the agreement for an award of attorneys' fees otherwise regarding a general breach of the agreement.
>
> To be honest, I looked at some of the indemnification language in the Sigma agreement, and an argument may be made that the Sigma agreement has the owner, quote, Joint Venture indemnifying Sigma. I don't know. That wasn't in front of me. But, I found no provision generally allowing attorneys' fees to a successful party or for even any litigation over breach of contract, except as limited in the agreement.

N.T., 10/23/13, at 654–655.

> It is disingenuous of the defense to presently suggest error in the consideration of attorney's fees. The defense claimed attorney fees and indeed was afforded the opportunity to document their bill even after trial testimony closed. (*See particularly* page 634 of the trial transcript). [Karandrikas'] counsel provided invoices and payment records during discovery. Indeed the invoices and records of payment were trial exhibits P32 and P33 to which no objection was made and in the absence of any objection, were admitted prior to the start of testimony. (Pages 6 – 7 Trial Transcript.). In the Court's Pre-trial Order, [Appellant's] legal fee claim was noted. [Karandrikas'] legal fee claim was included in his damages total. All involved at trial

knew legal fees were included in the case in chief. As raised, [this issue] now borderers [sic] on the frivolous.

Trial Court Opinion, 1/27/14, at 8.

As stated above, a timely objection is required to preserve an issue for appeal, and issues not raised in the lower court are waived and cannot be raised for the first time on appeal. **Shelhamer**, 58 A.3d at 770; Pa.R.C.P. 227.1(b); Pa.R.A.P. 302(a).

Upon review, we conclude that Appellant waived this issue. The record at hand confirms that Appellant was aware of Karandrikas' claim for attorneys' fees before trial and that he did not request a lodestar or object to the rates and the hours submitted in discovery or testified to by Karandrikas and Karandrikas' son, Nikolaos, at trial. Complaint, 5/20/10, at 18; Amended Complaint, 6/12/12, at 16; N.T., 10/21/13, at 66, Exhibit P32; N.T., 10/22/13, at 214–215, Exhibit P33.

Lastly, Appellant challenges the trial court's order directing the appointment of a receiver as an abuse of discretion. Appellant's Brief at 53.[4] In response, Karandrikas claims that Appellant suggested the appointment of a receiver, did not object to the appointment, and, therefore, "should not now be allowed to complain about the Trial Court's order." Karandrikas' Brief at 59. Moreover, Karandrikas contends, Appellant's self-dealing

---

[4] The appointment of a receiver is within the trial court's discretion and will be reviewed for an abuse of that discretion. **Bogosian v. Foerderer Tract Comm., Inc.**, 399 A.2d 408, 411 (Pa. Super. 1979).

provided justification for appointment of a receiver and the winding up of the joint venture. *Id.* at 60.

The trial court disposed of Appellant's challenge to the appointment of a receiver as follows:

> Unfortunately, present counsel, succeeding trial counsel, has failed to appreciate the context and indeed has mischaracterized the receiver issue as a "last minute request" by [Karandrikas'] counsel. The most cursory review of defense counsel's closing argument commencing at page 602 of the Trial Transcript reveals the question posed as being "what is an appropriate remedy where a joint venture is broken up?" Continuing, ". . . the simplest thing is he can dissolve it. . ." and ". . . I am going to leave it in your hands. You heard what he wants. And if you can do it, that would be fine. If not, we will clearly live with whatever you decide."
>
> After deciding then the underlying breach of contract action, contrary to present counsel's statement, the Court did explain the decision to appoint a receiver and further engaged in a dialogue with trial counsel. The Trial Transcript pages 659 – 662 clearly set forth what occurred. Indeed, counsel for the parties did confer and submit and suggested [a] receiver to which trial counsel had no objection. It is true that this Court did indicate it was not going to enter a detailed comprehensive 27 page single spaced Order detailing what the receiver is going to do. Trial Transcript 662. This Judge, as indicated to counsel, expected them to select a receiver knowledgeable, such as a bankruptcy trustee, to liquidate the assets, file an accounting and disburse whatever to who[m]ever. If present counsel's argument that security was not required or two appraisers were not appointed is somehow fatal to the appointment, the simple answer is that such can be easily remedied by setting security and naming appraisers.
>
> It is this Judge's belief that the instant appeal has absolutely no merit and is merely a delaying tactic.

Trial Court Opinion, 1/13/14, at 1–2.

We reiterate that a timely objection is required to preserve an issue for appeal and that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. **Shelhamer**, 58 A.3d at 770; Pa.R.C.P. 227.1(b); Pa.R.A.P. 302(a).

Upon review, we conclude that Appellant waived this issue. During closing argument, counsel for Appellant informed the trial court that "Appellant would like to have you direct Mr. Karandrikas to make a third-party offer in compliance with the Joint Venture agreement and see if it works out. . . . And if you can do it, that would be fine. **If not, we will clearly live with whatever you decide.**" N.T., 10/23/13, at 603–604 (emphasis supplied). In response, counsel for Karandrikas reiterated the relief requested in the original and amended complaints: "[T]o appoint a receiver to wind up the partnership." **Id.** at 629.

After rendering its verdict in favor of Karandrikas, the trial court addressed dissolution of the joint venture as follows:

> It doesn't take a lot of discussion. The agreement does provide for a buyout. And if any venturer wants to proceed under the agreement, I am not going to say no. However, this is like a divorce. Husband and wife ain't getting along. What am I going to do with the house and the kids? I am going to appoint a receiver. And so everybody knows upfront, there will be costs paid up[ ]front. There will be a deposit made for the receiver's costs and expenses.
>
> However, while I may be prepared to name a receiver, I will give counsel the opportunity to confer and suggest a

receiver, or, if they cannot agree, to submit the name they would like to see as the receiver.

N.T., 10/23/14, at 660. In response, Appellant's counsel asked a question: "[I]f we are going to have a receiver who is going to sell the properties, what about Sigma's obligations to manage the three existing tenants?" *Id.* at 660–661. Having agreed to "live with" whatever the trial court decided, Appellant did not object when the trial court decided to appoint a receiver. Thus, Appellant acquiesced in the appointment of a receiver and did not preserve a challenge to that decision by filing a contemporaneous objection. *Shelhamer*, 58 A.3d at 770; Pa.R.C.P. 227.1(b); Pa.R.A.P. 302(a).

In sum, we conclude that Appellant's issues lack merit or are waived. Thus, we affirm the order appointing a receiver and the judgment in favor of Karandrikas.

Order appointing a receiver affirmed. Judgment in favor of Karandrikas affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2014

-22-