J-A13034-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GOURMET'S DELIGHT MUSHROOMS, LP, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL D. KEATING, SUSAN S. KEATING, SEAN C. SMITH, MALLORY P. AUSTIN, SARAH BERDOULAY, TROY ST. JOHN, RICHARD A. MASHA, TERESA R. MASHA, JULIE B. ENGILES, GARY M. MACK, BARBARA L. MACK, WILLIAM D. WALKER, MARGARET W. WALKER, JOSEPH SAMUEL COX, ANNE M. JEAVONS, ERIC G. JEAVONS, PATRICK G. TALWIN, LINDA A. TIBERIA, ROBERT S. REYNOLDS, WENDY L. REYNOLDS, LOUIS F. DONAGHUE, MARIANNE C. DONAGHUE, CHRISTOPHER M. WURM, VIRGINIA C. NORTH, JANET A. SMITH, MARY ANN HITCHENS, ARTHUR R. TAYLOR, JR., CYNTHIA L. TAYLOR, ANTHONY L. LAURIA, LINDA S. LAURIA, DANNY MILANO, CARRIE MILANO AND LYNN ARRINGTON | : | |
| | : | |
| APPEAL OF: LYNN ARRINGTON | : | No. 3413 EDA 2018 |

Appeal from the Order Entered October 26, 2018
in the Court of Common Pleas of Chester County
Civil Division at No(s): 2017-07576-RC

| | | |
|---|---|---|
| GOURMET'S DELIGHT MUSHROOMS, LP, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL D. KEATING, SUSAN S. KEATING, SEAN C. SMITH, MALLORY P. AUSTIN, SARAH BERDOULAY, TROY ST. JOHN, RICHARD A. MASHA, TERESA R. MASHA, JULIE B. | : | |

J-A13034-19

ENGILES, GARY M. MACK, BARBARA  :
L. MACK, WILLIAM D. WALKER,  :
MARGARET W. WALKER, JOSEPH  :
SAMUEL COX, ANNE M. JEAVONS,  :
ERIC G. JEAVONS, PATRICK G.  :
TALWIN, LINDA A. TIBERIA, ROBERT  :
S. REYNOLDS, WENDY L. REYNOLDS,  :
LOUIS F. DONAGHUE, MARIANNE C.  :
DONAGHUE, CHRISTOPHER M.  :
WURM, VIRGINIA C. NORTH, JANET  :
A. SMITH, MARY ANN HITCHENS,  :
ARTHUR R. TAYLOR, JR., CYNTHIA L.  :
TAYLOR, ANTHONY L. LAURIA, LINDA  :
S. LAURIA, DANNY MILANO, CARRIE  :
MILANO AND LYNN ARRINGTON  :
  :
APPEAL OF: SEAN C. SMITH,  :
MALLORY P. AUSTIN, SARAH  :
BERDOULAY, TROY ST. JOHN,  :
ARTHUR TAYLOR, CYNTHIA TAYLOR,  :
RICK MASHA, TERESA MASHA, GARY  :
M. MACK, BARBARA L. MACK,  :
WILLIAM D. WALKER, MARGARET W.  :
WALKER, JOSEPH S. COX, PATRICK  :
G. TALWIN, LINDA A. TIBERIA,  :
ROBERT S. REYNOLDS, WENDY L.  :
REYNOLDS, LOUIS F. DONAGHUE,  :
MARIANNE C. DONAGHUE,  :
CHRISTOPHER M. WURM, VIRGINIA  :
C. NORTH, JANET A. SMITH, MARY  :
ANN HITCHENS, ANTHONY L. LAURIA,  :
LINDA S. LAURIA, DANNY MILANO,  :
AND CARRIE MILANO  :  No. 3436 EDA 2018

Appeal from the Order Entered October 26, 2018
in the Court of Common Pleas of Chester County
Civil Division at No(s): 2017-07576-RC

BEFORE:  SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 16, 2019**

* Retired Senior Judge assigned to the Superior Court.

- 2 -

Twenty-eight neighboring property owners (collectively, the Neighbors)[1] appeal from the October 26, 2018 order granting summary judgment in favor of Gourmet's Delight Mushrooms, LP (Gourmet), and denying summary judgment to the Neighbors. Specifically, this consolidated appeal challenges the trial court's interpretation of certain deed restrictions, and the determination that the deed restrictions did not apply to Gourmet's land development plan. Upon review, we affirm in part, reverse in part, and remand for proceedings consistent with this memorandum.

**Factual Background**

We glean the following background from the record. Gourmet owns a property in London Grove Township (London Grove Property), on which Gourmet operates a mushroom-growing business. In 2005 and 2014, Gourmet purchased two properties (Benmark Property and Irwin Property, respectively), which are contiguous to its London Grove Property and located entirely in Franklin Township, in order to expand its mushroom growing operations. Gourmet subsequently merged the Franklin Township properties (collectively, Gourmet Property).

The Irwin Property is subject to the following deed restriction (Irwin Restriction), which was recorded in 1951.

---

[1] Default judgments were entered below against Paul D. Keating, Susan S. Keating, Julie B. Engiles, Anne M. Jeavons, and Eric G. Jeavons. These individuals were not parties to the motions for summary judgment and are not parties to this appeal.

ALSO UNDER AND SUBJECT to the provision that no mushroom houses shall be erected or maintained upon the above-described premises by said Grantees, their heirs, assigns or occupiers of said premises. []

The Benmark property is subject to a similar deed restriction (Benmark Restriction), which was recorded in 1955.

UNDER AND SUBJECT, also, to the restriction that no mushroom house shall be erected on the within conveyed premises for a period of ninety (90) years. []

## Mushroom Growing & Mushroom Houses

To understand better the issues in this case, we provide the following background on mushroom growing and mushroom houses. "The evolution of mushroom houses has been gradual and the result of much trial and error." Robert Snetsinger, *Mushrooms and Penn State: Past, Present, Future*, BULLETIN 767, May 1970, at 2 (Gourmet's Memorandum of Law, 7/25/2018, at Exhibit A). In 1950, standard mushroom houses existed that worked best for mushroom growing, but variations and modifications also existed at that time based on new technology. ALBERT M. KLIGMAN, HANDBOOK OF MUSHROOM CULTURE 20-21, 36 (2d ed. 1950) (Neighbors' Summary Judgment Record, 9/25/2018, at SJ_0167-0168, 0170). By 1970, "[a] typical small mushroom farm … consist[ed] of 'double' mushroom houses, an open composting yard, and storage areas." Snetsinger, **supra**, at 2 (Gourmet's Memorandum of Law, 7/25/2018, at Exhibit A). Regardless of the style of mushroom house, mushroom growing consists of six steps: (1) Phase I composting, (2) Phase II composting, (3) spawning, (4) casing, (5) pinning, and (6) cropping.

Daniel J. Royse and Robert B. Beelman, *Six Steps to Mushroom Farming*, PENN STATE EXTENSION, 1, https://extension.psu.edu/six-steps-to-mushroom-farming (SJ_0205).

"Phase I composting lasts from 6 to 14 days, depending on the nature of the material at the start and its characteristics at each turn. There is a strong ammonia odor associated with composting[.]" *Six Steps to Mushroom Farming*, ***supra***, at 5 (SJ_0209). In 1950, Phase I composting began immediately behind the mushroom house or, less often, under an open structure known as a shed. KLIGMAN, ***supra***, at 35-36 (SJ_0169-0170). After the last turning, the compost was moved into the mushroom house to begin Phase II composting. ***Id.*** at 121, 125-26 (SJ_0173, 0176-0177).

Phase II composting consists of pasteurization to kill insects, pest fungi, and other pests, as well as conditioning to remove ammonia, in order to transform the compost into a medium that will promote the growth of mushrooms. *Six Steps to Mushroom Farming*, ***supra***, at 5 (SJ_0209); KLIGMAN, *supra*, at 125 (SJ_0176). Today, Phase II composting occurs in one of three places: in wooden trays in an environmentally controlled Phase II room, in beds that are placed directly in the room used for all steps of mushroom growing, or in an insulated tunnel. *Six Steps to Mushroom Farming*, ***supra***, at 5-6 (SJ_0209-0210).

The third phase, spawning, is also known as Phase III composting. In this phase, grain mixes with calcium carbonate, and is then cooked,

sterilized, cooled, and inoculated with mushroom mycelia. Following these steps, the mixture becomes spawn, which is distributed onto the Phase II compost in order to seed the compost with mushroom mycelia. *Id.* at 9 (SJ_0213); David Meigs Beyer, Ph.D., *Basic Procedures for Agaricus Mushroom Growing*, Penn State Extension, 7-9, https://extension.psu.edu/basic-procedures-for-agaricus-mushroom-growing (SJ_0188-0190). "In recent years, the use of bulk Phase III compost has increased in popularity because it allows an increase in the number of crops a grower can expect from his production rooms." *Six Steps to Mushroom Farming*, **supra**, at 10 (SJ_0214). The spawning phase ends once the compost is fully-grown with spawn. *Id.* at 10 (SJ_0214).

The fourth phase is casing. "Casing is a top-dressing applied to the spawn-run compost on which the mushrooms eventually form." *Id.*

The fifth phase is pinning. During pinning, mushrooms grow from initials, to pins, to buttons, and ultimately to mushrooms. *Id.* at 13 (SJ_0217). During the final and sixth phase, cropping, mushrooms are harvested. *Id.* at 14 (SJ_0218).

**Procedural Background**

On August 2, 2017, Gourmet filed a complaint against the Neighbors seeking a declaratory judgment that the deed restrictions against the erection or maintenance of mushroom houses on the Gourmet Property did

not apply to its proposed composting facility. The Neighbors filed an answer and new matter.

On July 25, 2018, Gourmet moved for summary judgment against the Neighbors. On September 24, 2018, some neighbors[2] moved for summary judgment, and filed a brief in support of their motion and in opposition to Gourmet's motion.

**Gourmet's Motion for Summary Judgment**

In its motion for summary judgment, Gourmet argued that the deed restrictions did not apply, as a matter of law, to facilities used solely for composting. Gourmet's Motion for Summary Judgment, 7/25/2018, at 5. According to Gourmet, the term "mushroom house" as used in the 1950s is unambiguous and has a clearly established meaning: a "long and narrow block building with no windows." Memorandum of Law in Support of Gourmet's Motion for Summary Judgment, 7/25/2018, at 9. As such, Gourmet argued that "the proposed composting facility, within which no mushrooms are grown, cannot violate the prohibition." Gourmet's Motion for Summary Judgment, 7/25/2018, at 5 (unnecessary capitalization altered).

_____

[2] Specifically, Sean C. Smith, Mallory P. Austin, Sarah Berdoulay, Troy St. John, Arthur R. Taylor, Jr., Cynthia Taylor, Rick Masha, Teresa Masha, Gary M. Mack, Barbara L. Mack, William D. Walker, Margaret W. Walker, Joseph S. Cox, Patrick G. Talwin, Linda A. Tiberia, Robert S. Reynolds, Wendy L. Reynolds, Louis F. Donaghue, Marianne C. Donaghue, Christopher M. Wurm, Virginia C. North, Janet A. Smith, Mary Ann Hitchens, Anthony L. Lauria, Linda S. Lauria, Danny Milano, and Carrie Milano. Lynn Arrington joined the other neighbors' summary judgment motion on October 23, 2018.

Gourmet further argued that the deed restrictions were building restrictions, not use restrictions. *Id.*

In support of its interpretation of the deed restrictions, Gourmet attached to its Memorandum of Law several exhibits, consisting of excerpts from various books and websites. *See* Gourmet's Memorandum of Law, 7/25/2018, at Exhibits A-E.

**Neighbors' Response & Motion for Summary Judgment**

In response to Gourmet's motion, and in support of their own motion for summary judgment, the Neighbors argued that the term "mushroom house" as used in the 1950s had a different meaning than Gourmet's interpretation. According to the Neighbors, "the term 'mushroom house' was understood to encompass the entire mushroom operation, including the preparation of mushroom compost, which took place both immediately beside and within the mushroom house and which compost is essential to growing mushrooms." Neighbors' Motion for Summary Judgment, 9/24/2018, at 2.

Contrary to Gourmet's contention, the Neighbors argued that the deed restrictions were intended as restrictions on mushroom uses "in and around mushroom houses, including mushroom growing and the preparation of mushroom compost," and not just a restriction on a particular style of building. *Id.* at 3. The Neighbors maintained that "[t]he mushroom composting proposed by Gourmet violates the [d]eed [r]estrictions because

the proposed composting is part and parcel of the 'vertically integrated' system with Gourmet's existing mushroom growing operation" on the London Grove Property. *Id.* Therefore, the Neighbors sought a declaration that the deed restrictions prohibit any and all mushroom-growing uses, including the preparation of mushroom compost, and that the restrictions prohibit Gourmet from expanding its mushroom operations onto the Benmark and Irwin Properties. *Id.* at 4.

The Neighbors further argued that the "object or purpose of the parties in restricting 'mushroom houses' would be to prevent a mushroom operation from operating near residential properties" because of "odor, sanitation issues, water runoff, pests and insects, and the potential devaluation of nearby residential properties." Neighbors' Brief in Opposition to Gourmet's Motion for Summary Judgment, 9/24/2018, at 16.

In support of their interpretation of the deed restrictions, Neighbors filed of record several documents, including, *inter alia*, excerpts from various books and websites. *See* Neighbors' Summary Judgment Record, 9/25/2018, at SJ_0163-SJ_0228.

**Trial Court Decision**

In granting Gourmet's motion for summary judgment and denying the Neighbors' motion, the trial court found the term "mushroom house" unambiguous. According to the trial court, a "mushroom house is a thing, not a process. That thing is a mushroom house, not a composting wharf. …

J-A13034-19

Since a composting wharf is not a mushroom house, it follows that there is no prohibition against erecting or maintaining a composting wharf." Trial Court Opinion, 10/26/2018, at 8. Thus, the trial court granted Gourmet relief, and held that Gourmet was permitted to construct the proposed composting facility and perform composting activities on the Gourmet Property.

**Issues on Appeal and Relevant Legal Principles**

This timely-filed appeal followed.[3, 4] On appeal, the Neighbors argue that the trial court (1) misinterpreted the deed restrictions and (2) erred in concluding Gourmet's proposed expansion was limited to Phase I composting outdoors on a composting wharf. Neighbors' Brief at 3, 26, 40.[5] According

---

[3] Both the Neighbors and the trial court complied with Pa.R.A.P. 1925. In lieu of a separate opinion, the trial court issued a statement relying on its October 26, 2018 memorandum. Trial Court Opinion, 12/17/2018.

[4] "[A]n order denying summary judgment is ordinarily a non-appealable interlocutory order. However, an order in a declaratory judgment action that either affirmatively or negatively declares rights, status, and other legal relations is a final order." ***Good v. Frankie & Eddie's Hanover Inn, LLP***, 171 A.3d 792, 794 n.1 (Pa. Super. 2017) (citations and quotation marks omitted). Thus, this appeal from the trial court order denying the Neighbors' motion for summary judgment and granting Gourmet's motion is properly before us.

[5] Because Appellant Arrington filed her own motions and brief, which joined the other neighbors' motion for summary judgment, brief in support thereof and in opposition to Gourmet's motion for summary judgment, brief on appeal, and reply brief filed by the remaining Neighbors, when this Court cites any document filed by the Neighbors, we are referencing those documents filed on behalf of Sean C. Smith, Mallory P. Austin, Sarah Berdoulay, Troy St. John, Arthur Taylor, Cynthia Taylor, Rick Masha, Teresa
*(Footnote Continued Next Page)*

- 10 -

to the Neighbors, the term "mushroom house" in the 1950s referred to a building in which the second through sixth phases of mushroom growing took place, and immediately beside which the first phase of composting took place. *Id.* at 32-33. As such, the Neighbors contend that the trial court erred in concluding that the deed restrictions did not apply to Gourmet's land development plan. *Id.* at 40.

We begin with the relevant legal principles. "In a declaratory judgment action, just as in civil actions generally, summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." ***Certain Underwriters at Lloyds v. Hogan***, 852 A.2d 352, 354 (Pa. Super. 2004) (citation and quotation marks omitted). When reviewing a challenge to an order granting summary judgment,

> [w]e may reverse if there has been an error of law or an abuse of discretion. Our standard of review is *de novo*, and our scope plenary. We must view the record in the light most favorable to the non[-]moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Furthermore, [in] evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

Masha, Gary M. Mack, Barbara L. Mack, William D. Walker, Margaret W. Walker, Joseph S. Cox, Patrick G. Talwin, Linda A. Tiberia, Robert S. Reynolds, Wendy L. Reynolds, Louis F. Donaghue, Marianne C. Donaghue, Christopher M. Wurm, Virginia C. North, Janet A. Smith, Mary Ann Hitchens, Anthony L. Lauria, Linda S. Lauria, Danny Milano, and Carrie Milano.

- 11 -

the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Carlino E. Brandywine, L.P. v. Brandywine Vill. Ass'n*, 197 A.3d 1189, 1199-200 (Pa. Super. 2018) (citation omitted). "[W]e review the trial court's denial of summary judgment for an abuse of discretion or error of law." *Hildebrand v. EQT Prod. Co.*, 165 A.3d 969, 971 (Pa. Super. 2017) (citation and quotation marks omitted).

A trial court's construction of a deed is a question of law, which compels *de novo* review.

When interpreting deeds, this Court's primary objective must be to ascertain and effectuate the intent of the parties. When the language of the deed is free from ambiguity, the intent of the parties must be determined from the language of the deed. Conversely, when the language is ambiguous, intent is determined by the situation and conduct of the parties, surrounding circumstances, the object they had in view and the nature of the subject matter. Further, if the language in a deed is ambiguous, "then all of the attending circumstances existing **at the time of the execution of the instrument** should be considered to aid in determining the apparent object of the parties." *Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, [] 162 A.3d 327, 341 ([Pa. ]2017) (citation omitted; emphasis in original).

*Russo v. Polidoro*, 176 A.3d 326, 329 (Pa. Super. 2017) (some citations and quotation marks omitted).

"Restrictive covenants[,] which restrict the use of property, although not favored by the law, are legally enforceable. Restrictive covenants are to

- 12 -

be strictly construed against persons seeking to enforce them and claiming benefit thereof and in favor of the free, unrestricted use of property."

**Logston v. Penndale, Inc.**, 576 A.2d 59, 62 (Pa. Super. 1990) (citations omitted).

> Moreover, restrictive covenants are divided into two categories, building restrictions and use restrictions. Building restrictions are concerned with the physical aspect or external appearance of the buildings. Use restrictions involve the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein.

**Richman v. Mosites**, 704 A.2d 655, 658 (Pa. Super. 1997) (citations and quotation marks omitted). Where the restrictive covenant is a building restriction, "the purposes for which the disputed parcel may be used are irrelevant." **Id.**

> The distinction between a building restriction and a use restriction is a "basic rule of construction." This Court will not allow extrinsic evidence of the parties' intent to contradict the express statement contained in the restrictive covenant. "A building restriction and a use restriction are wholly independent of one another and, … the one is not to be extended so as to include the other unless the intention so to do is expressly and plainly stated[.]"

**Id.** at 658-59 (citations omitted).

**Analysis**

Upon review of the record, we do not agree with the trial court that the term "mushroom house," as used in the 1950s, is unambiguous. Certainly, a fact-finder could agree with Gourmet's interpretation of the deed restrictions and that they do not apply to the proposed land development

- 13 -

plan. However, we conclude that Neighbors have set forth sufficient evidence, which, if believed, would permit a reasonable fact-finder to conclude that "mushroom house" was used in the 1950s as a term of art to describe an indoor facility where five of the six phases of mushroom growing took place, and beside which composting began.

In considering whether the deed restriction is a building restriction or use restriction, we are guided by this Court's decision in *Buck Hill Falls Co. v. Clifford Press*, 791 A.2d 392 (Pa. Super. 2002). In that case, this Court reviewed separately two restrictions. The first restriction prohibited the keeping of poultry. The second restriction stated that "no barn, stable, cowshed, [or] chicken house ... shall ... be erected or constructed upon any part of the hereby granted premises." *Id.* at 398 (quotation marks omitted). Giving effect to the intention of the parties and the nature of the subject matter at the time of the restriction, this Court found the definition of "chicken house" obvious. "The ordinary usage and plain meaning of the phrase 'chicken house,' as well as common sense, require that a structure built to house chickens or poultry be defined as a 'chicken house.'" *Id.*

Likewise, a reasonable fact-finder here could conclude that the ordinary usage and plain meaning of "mushroom house" in the 1950s could not be separated from the use of that building to grow mushrooms. As such, any structure built to grow mushrooms could be considered a "mushroom house," regardless of its architectural style. Thus, while the

deed restrictions herein reference a structure, a reasonable fact-finder could conclude that the deed restrictions are actually use restrictions because they involve "the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein" and not simply the external appearance of the buildings. *Richman*, 704 A.2d at 658 (citations omitted).

Pursuant to the land development plan, Gourmet's plans for expansion on the Benmark and Irwin Properties include the following:

> a[n] 84,150 square foot, three-sided building[,] having a length of 510 feet and a width of 165 feet connected to a 45,900 square foot covered wharf and a 57,540 square foot uncovered wharf and a separate 137,700 square foot four-sided building having a length of 540 feet and a width of 255 feet[.] … Development of the Gourmet Property will permit Gourmet to relocate its existing composting activities from the London Grove Property to the proposed composting facility and to construct additional mushroom growing rooms in the area on the London Grove Property vacated by the relocation of Gourmet composting activities.

Trial Court Opinion, 10/26/2018, at 5-6 (unnecessary capitalization altered).

According to Gourmet, the composting facility will be used solely for composting and include "a flat concrete turning wharf." Gourmet's Motion for Summary Judgment, 7/25/2018, at 5. The facility itself will not involve any mushroom growing, but will include, in addition to the composting wharf, storage of raw materials and areas designated for spray irrigation of stormwater. *Id.*; Memorandum of Law in Support of Gourmet's Motion for Summary Judgment, 7/25/2018, at 2-3.

- 15 -

On the other hand, Neighbors argue that Gourmet's land development plan indicates it will use the Gourmet Property specifically for Phases I, II, and III composting. Neighbors' Brief in Opposition to Gourmet's Motion for Summary Judgment, 9/24/2018, at 8. As indicated *supra*, Phases II and III composting took place within the standard "mushroom house" structure used in the 1950s. Additionally, based upon a letter written by Gourmet's counsel, Gourmet has indicated that the proposed composting facility for the Gourmet Property "will include a designated area to be used for mushroom growing." Letter, 8/13/2014, at 1 (unnumbered) (Neighbors' Summary Judgment Record, 9/25/2018, at SJ_0159). Moreover, the Neighbors argue that Gourmet's earlier attempts to have the Neighbors release the properties from the deed restrictions demonstrate a belief on Gourmet's behalf that its intended use of the Gourmet Property is not permitted under the deed restrictions. Neighbors' Brief in Opposition to Gourmet's Motion for Summary Judgment, 9/24/2018, at 19-20; **see also, e.g.,** Letter, 3/21/2005 (SJ_0145) (requesting release of restriction in order to build office building, and proposing in exchange a new restriction against commercial composting).

Based upon the foregoing, we conclude that the competing definitions of "mushroom house," as well as the uncertainty in the record as to what specific mushroom-growing phases Gourmet plans to pursue on the Gourmet Property, evidence a dispute of material fact. Our Supreme Court has

emphasized "that it is not [a] court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried." *Fine v. Checcio*, 870 A.2d 850, 862 (Pa. 2005) (citing Pa.R.C.P. 1035.2(1)). Accordingly, we hold that the trial court erred in granting summary judgment to Gourmet. *See Selective Way Ins. Co. v. Hospitality Group Servs., Inc.*, 119 A.3d 1035, 1051 (Pa. Super. 2015) (*en banc*) (reversing grant of summary judgment in declaratory judgment action where there was an issue of fact to be decided by the trial court).

## Conclusion

Because there is enough evidence in the record, which, if believed, would permit a reasonable fact-finder to conclude that the deed restrictions prohibit mushroom growing, and that the deed restrictions would apply to Gourmet's proposed land development plan for the restricted properties. Thus, we hold that there is a dispute of material fact as to what "mushroom house" means and whether the deed restrictions apply to Gourmet's proposed land development plan. Accordingly, we affirm[6] the trial court's order denying the Neighbors' motion for summary judgment, reverse the trial court's order granting Gourmet's motion, and remand for proceedings consistent with this memorandum.

---

[6] "To the extent that our reasoning differs from that of the trial court, … we may uphold a decision of the trial court if there is any proper basis for the result reached[.]." *Generation Mortg. Co. v. Nguyen*, 138 A.3d 646, 651 n.4 (Pa. Super. 2016) (citation and quotation marks omitted).

- 17 -

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/19